## KOGAN v. SCHULTE et al.

District Court, S. D. New York.
June 20, 1945.

Nathan B. Kogan, of New York City, for plaintiff.

Ernst, Gale, Bernays, Falk & Eisner, of New York City (Edwin A. Falk and Edgar A. Samuel, both of New York City, of counsel), for defendant David A. Schulte.

Hirson & Bertini, of New York City (Max L. Rothenberg, of New York City, of counsel), for defendant Park & Tilford, Inc.

Roger S. Foster, Sol., Milton V. Freeman, Asst. Sol., and W. Victor Rodin, Atty., all of Philadelphia, Pa., for Se-

curities and Exchange Commission, amicus curiae.

Francis M. Shea, Asst. Atty. Gen., John F. X. McGohey, U. S. Atty., and John B. Creegan, Asst. U. S. Atty., for the United States.

LEIBELL, District Judge.

Plaintiff, Marjorie D. Kogan, purchased 50 shares of Park & Tilford, Inc., common stock on the New York Stock Exchange on March 10, 1944. She sold 25 shares on April 28, 1944. The remaining 25 shares she registered in her own name on the transfer records of the corporation on May 3, 1944. Since March 10, 1944, she has been an owner of Park & Tilford common stock, and since May 3, 1944, she has been a stockholder of record. The corporation, Park & Tilford, Inc., is a Delaware corporation and its common stock is listed on the New York Stock Exchange.

On April 28th, 1944, her attorneys notified the corporation, Park & Tilford, Inc., that David A. Schulte had realized profits from purchases and sales of the stock of the corporation in violation of the Securities Exchange Act of 1934 (§ 16(b) and that the profits were recoverable by the corporation. Her attorneys requested that appropriate action be taken against Mr. Schulte within sixty days or else plaintiff would begin suit. On June 19th, as a result of that demand, the defendant Schulte submitted to the corporation a statement of his profits, pursuant to said section 16(b) of the Act, and enclosed his check for $264,580.50 "representing a sum equal to such profits". His letter of transmittal also added that no one participated with him in any of the transactions and that no brokerage account was maintained by him in the name of anyone but himself. Thereafter Mr. Schulte repaid an additional sum of $247.07, making a total of $264,827.57. Apparently this additional payment followed an examination of his statement by an accountant for plaintiff, but just what it represented is not clear.

The statement accompanying Mr. Schulte's payment of $264,580.50 covers sales made by him of stock which he purchased between October 20, 1942, and January 20, 1944. I have examined that statement and there are no records before me from which I can determine its accuracy, or whether the rule for computing profits as set forth in Smolowe v. Delendo Corpo-

ration, 2 Cir., 136 F.2d 231, 239, 148 A.L.R. 300, has been followed. Dates of purchases are given but no dates of sales and no prices for specific transactions. A footnote to the statement reads: "The Proceeds as above shown are from the highest priced sales within a six months period before and/or after the dates of the purchases." The rule laid down in the Smolowe case is stated as follows: "The only rule whereby all possible profits can be surely recovered is that of lowest price in, highest price out—within six months."

For 7,100 shares purchased between October 21, 1941, and September 22, 1942, the statement lists "no applicable sales". For purchases of 1,000 shares on December 10, 1942, 500 shares on December 18, 1942, 200 shares April 1, 1943, 343 shares April 2, 1943, 800 shares April 24, 1943, and 59 shares May 28, 1943, there is also the notation "no applicable sales", although there do appear sales for stock purchased between the dates of October 20, 1942, and June 2, 1943. I am not called upon to inquire further into those transactions on this motion because the motion is limited in its scope and seeks a partial summary judgment in relation to certain other transactions which admittedly are not included in the computations submitted by Mr. Schulte with his letter to the corporation dated June 19, 1944 enclosing the check for $264,580.50, nor are they covered by the later check of $247.07.

The present motion is for "* * * an order allowing the plaintiff to have partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, against the defendant David A. Schulte, to the extent that the said David A. Schulte be directed to account for all profits made by him as a result of the purchase on January 31st, 1944, of 342 shares of $1.00 par common stock of the defendant Park & Tilford, Inc. on the conversion of 274 shares of 6% cumulative preferred stock of the said defendant Park & Tilford, Inc., and the subsequent sale or sales of 342 shares of common stock by the defendant David A. Schulte within a period of six months after the acquisition thereof on January 31st, 1944 and directing the defendant David A. Schulte to pay over the profits realized thereon together with interest to the defendant Park & Tilford, Inc. and for a severance of the action as to the other matters alleged in the complaint".

Park & Tilford, Inc., opposes plaintiff's motion on the grounds that the transactions for which summary judgment is requested are not embraced by the complaint, and that the motion threatens to prejudice the rights and interests of Park & Tilford, Inc. in a pending suit for $500,000 which the corporation has brought against the David A. Schulte Trust and which involves legal issues raised by the present motion.

■ Paragraph 12 of the complaint alleges that as a result of defendant Schulte's trading, and that of his 1924 corporation, in stock of Park & Tilford, Inc., between 1942 and 1944, during the six months' periods referred to in Title 15 U.S.C.A. § 78p (b), § 16(b) of the Securities Exchange Act of 1934, he earned profits at least in the sum of $1,000,000 to which Park & Tilford, Inc., is entitled under the provisions of the statute. And paragraph 15 charges that the representations by Schulte that his profits were $264,580.50 plus the $247.07 (a total of $264,827.57) were false and that he had derived additional undisclosed profits. It is also charged that the defendants Eisner and Pheifer, directors of Park & Tilford, Inc., conspired with Schulte to conceal such facts from the stockholders and to prevent the defendant, Park & Tilford, Inc., from instituting any action to recover the additional profits and failed and refused to have such action instituted. It is also alleged that the individual defendants were directors of Park & Tilford, Inc. and constituted a majority of the Board. Mr. Schulte's answer pleads as a special defense that he paid $264,827.-57 to Park & Tilford, Inc., "in full of all money owing" said corporation. In my opinion the transactions, on which partial summary judgment is sought, are embraced within the broad allegations of the complaint, but if the complaint were not sufficiently broad, it might be deemed amended to include the essential allegations of the affidavits as to these particular transactions. Seaboard Terminals Corporation v. Standard Oil Co., 2 Cir., 104 F.2d 659.

I fail to see how the decision of this motion would prejudice the issues involved in the suit brought by the corporation against the Schulte Trust, which was instituted November 17, 1944. It appears that the Schulte Trust owned 6,604 shares of preferred stock of Park & Tilford, Inc. which the Trust converted into 8,255 shares of common stock on January 19,

1944. The Schulte Trust served an amended answer March 9, 1945, in that action, raising certain special defenses; and at least one of them is not involved in this litigation. The private arrangement with David A. Schulte to abide by the result of the suit against the Schulte Trust does not meet the requirements of section 16(b), which permits suit by an owner of a security against the insider for the profits if the issuer (Park & Tilford, Inc.) "shall fail or refuse to bring such suit within sixty days."

■ The individual defendants in the case at bar urge that partial summary judgment should not be granted because there is an issue of fact as to whether the demand the plaintiff made on Park & Tilford, Inc., to sue the defendant Schulte was broad enough to include the sale of the 342½ shares, and as to whether plaintiff's claim that further demand upon the corporation would be futile is well founded. I believe that the demand was broad enough. Further, the composition of the Park & Tilford's board of directors, their close business and family relationship to David A. Schulte, their failure to take any action against the defendant Schulte until demand was made by plaintiff, although some of them probably knew of his stock operations, and their failure to take any action against the Schulte Trust until one of the directors, Mr. Pheifer, received a letter from the Securities and Exchange Commission calling his attention to the conversion by the Trust of preferred stock into common stock on January 19, 1944, and its sale of the common stock at a profit within six months thereafter—all that presents a situation which in my opinion would excuse a further demand, if plaintiff's first demand were not broad enough. In the usual stockholder's derivative action against directors, a showing of such facts would support an allegation in the complaint that a demand on the directors to bring the suit in the name of the corporation would be futile. Cohen v. Industrial Finance Corporation, D.C., 44 F. Supp. 491, at page 495.

The defendant Schulte contends that the transactions on which partial summary judgment is sought are not covered by section 16(b) of the Securities Exchange Act of 1934.

The following facts appear to be undisputed: That on or prior to May 10, 1942, the defendant, David A. Schulte, became

the owner of 274 shares of preferred stock of Park & Tilford, Inc.; that the board of directors of the corporation at a meeting held on November 29, 1943, decided to call for redemption its outstanding preferred stock as of March 20, 1944; that notice of intention to redeem was served December 20, 1943, and the redemption price was fixed at $55 a share, plus any arrears of dividends; that the preferred stock contained a privilege to the holder thereof to convert his preferred shares into common stock of the corporation at any time prior to the redemption of the preferred stock; that on January 31, 1944, David A. Schulte made this conversion and received 342½ shares of Park & Tilford common stock in exchange for the 274 shares of preferred stock; that on said date, January 31, 1944, the 342½ shares of common stock he thus received had a market value of 76⅝₆ per share; that thereafter and within a six months' period he sold thousands of share of Park & Tilford common stock at prices in excess of 76⅝₆ and realized profits on said sales; that David A. Schulte's relationship to Park & Tilford, Inc., was such that he may properly be classed as an "insider". He was the dominant figure in its affairs.

Section 16(b) of the Securities Exchange Act of 1934 provides: "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

There are two exemptions specified in Section 16(b); one is an exemption of equity securities "acquired in good faith in connection with a debt previously contracted", and the other "any transaction * * * where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved." The first exemption will be hereinafter discussed. The second exemption above mentioned would not apply, because Mr. Schulte was the beneficial owner of the common stock both on January 31, 1944, and on the dates of the sales thereafter made.

There is also a third class of exemptions mentioned in general terms in section 16(b), namely, "any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." The Securities and Exchange Commission has not by any rule or regulation exempted from this subsection 16(b) the acquisition of equity securities, where the beneficial owner has obtained them by the exercise of the right of conversion of preferred stock into common stock of the issuing corporation. In fact, the Commission has taken just the opposite view on this motion, and in connection with some similar transactions of the Schulte Trust.

It has been urged on Mr. Schulte's behalf that the acquisition of the 342½ shares of common stock by him was not a purchase nor was it an exchange, but on the contrary it was a discharge by the corporation of its obligation to him as a preferred stockholder. The corporation's obligation would not be in the nature of "a debt previously contracted". There is no debt involved here, only an "equity security". The first exemption of section 16(b) would not apply.

Prior to January 31, 1944, Mr. Schulte possessed a right to exchange his preferred stock for common stock of the corporation. The corporation could not force the exchange. Some voluntary act on Mr. Schulte's part was required to bring about

the exchange of his preferred stock for the common stock. He could have continued on as a preferred stockholder until the corporation redeemed the preferred stock for cash on March 20, 1944, at the price specified in the notice of redemption. The certificate of incorporation as amended July 22nd, 1937, provided that "the foregoing right to convert may be exercised with respect to the preferred stock so called for redemption at any time prior to said redemption date." On January 31st, 1944, he exercised that right and that is the date from which the six months' period is measured under section 16(b).

■ A basic question presented is whether the conversion of the 274 shares of preferred stock into 342½ shares of common stock of Park & Tilford, Inc., on January 31, 1944, was a "purchase" of the common stock within the meaning of the Act. Under Section 3(a) (13) of the Act, 15 U.S.C.A. § 78c(a) (13), "The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." The above quoted definition supplements and adds to the ordinary interpretation of the word "purchase", so as to include not only any actual purchase but also any contract to buy, purchase or otherwise acquire. In the exercise of the conversion privilege on January 31, 1944, David A. Schulte acquired 342½ shares of common stock from the treasury of Park & Tilford, Inc. He paid for it, not in cash but by delivering to Park & Tilford, Inc., 274 shares of its preferred stock. In my opinion, the transaction constituted a "purchase". The consideration need not be cash.

The provision for the conversion of preferred into common stock at the option of a stockholder is not any thing new or unusual. It is fairly common in securities of that type. Nothing has been called to my attention which would indicate any intention on the part of Congress to exempt from the provisions of Section 16(b) of the Act any common stock acquired in an exchange for preferred stock. Indeed, it appears to have been the intention of Congress to strike down any means by which insiders, because of their special knowledge of the affairs of the corporation or the plans of its board of directors, might realize for themselves a "short swing" profit, which would be denied the other stockholders or the investing public, not enjoying such inside information.

■ We must not lose sight of the purposes of the statute. Judge Clark in Smolowe v. Delendo Corporation, supra, gives us a standard of interpretation which is applicable to the facts of the present case. He states (136 F.2d at page 239): "The statute is broadly remedial. Cf. Wright v. Securities and Exchange Commission, 2 Cir., 112 F.2d 89. Recovery runs not to the stockholder, but to the corporation. We must suppose that the statute was intended to be thorough-going, to squeeze all possible profits out of stock transactions, and thus to establish a standard so high as to prevent any conflict between the selfish interest of a fiduciary officer, director, or stockholder and the faithful performance of his duty. Cf. Woods v. City Nat. Bank & Trust Co. of Chicago, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820; In re Mountain States Power Co., 3 Cir., 118 F.2d 405; Otis & Co. v. Insurance Bldg. Corp., 1 Cir., 110 F.2d 333; In re Republic Gas Corp., D.C.S.D.N.Y., 35 F.Supp. 300."

Another quotation from that opinion is applicable here: "It is naive to suppose that their knowledge of their own plans as officers did not give them most valuable inside knowledge as to what would probably happen to the stock in which they were dealing. It is difficult to find this use 'unfair' in the sense of illegal; it is certainly an advantage and a temptation within the general scope of the legislature's intended prohibition."

I believe that it would be running counter to the purpose of the Congress to say that the acquisition of the common stock by Mr. Schulte in exchange for the preferred stock on January 31, 1944, was not a purchase within the language, spirit and purpose of section 16(b) of the Securities Exchange Act of 1934.

■ Another contention of the defendant Schulte is that the particular transaction by which the conversion of the preferred into the common stock was made, took place in the State of Delaware at the main office of Park & Tilford, Inc., and that it was not a transaction in interstate commerce within the meaning of Article 1, Section 8, Clause 3 of the Constitution of the United States under which the Congress is granted power to regulate commerce among the several states. Admittedly Mr. Schulte was a resident of New York City. If Mr. Schulte had sent funds from New York to the corporation in Delaware to pur-

chase common stock from the Treasury of the corporation, that would have been a transaction in interstate commerce. I believe that when a preferred stockholder sends to the main office of the corporation in another state his shares of preferred stock for the purpose of having them converted into the common stock of the corporation, a transaction in interstate commerce is had.

Finally the defendant Schulte attacks the constitutionality of section 16(b) of the Act as applied to the securities involved in the transactions which are the basis of plaintiff's motion for partial summary judgment. He contends that if the exchange of his preferred stock for common stock comes within the purview of section 16(b) of the Securities Exchange Act of 1934 as a purchase, then the section is in that respect unconstitutional. The claim is made that the application of section 16(b) of the Act would constitute an impairment of the rights of the preferred stockholder and an impairment of the obligation of the corporation to its preferred stockholder.

■ The contract clause of the United States Constitution (Article 1, Section 10) prohibits any State from passing a law impairing the obligation of contracts. That is a limitation on the powers of the States, not on those of Congress. "Freedom of the people to enter into and carry out contracts in respect of their property and private affairs * * * is protected by the due process clauses of the Fifth and Fourteenth Amendments." Restraints that are clearly unreasonable and arbitrary would be repugnant to the Amendments. See Highland v. Russell Car & Snowplow Co., 279 U.S. 253, at page 261, 49 S.Ct. 314, at page 316, 73 L.Ed. 688. But when contract rights are collaterally or incidentally impaired or destroyed by an Act of Congress, duly enacted pursuant to the powers conferred on Congress by the Constitution, the injured party may not complain. Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, at page 680, 55 S.Ct. 595, 79 L.Ed. 1110. To regulate commerce among the several states (Art. 1, Sec. 8, Clause 3) is one of the powers thus conferred upon Congress, and in the exercise of that power contract rights may be collaterally or incidentally impaired or destroyed. Section 16(b) of the Securities Exchange Act of 1934 is a proper exercise of the Congressional power to regulate interstate commerce. Smolowe v. Delendo Corporation, supra.

■ The fact is that the application of section 16(b) did not impair Mr. Schulte's right to exchange his preferred stock for common stock of Park & Tilford, Inc. Not only did he have the right, but he exercised it. He made the exchange and he received the common stock on January 31, 1944. Neither his right to make the exchange of the preferred stock, nor his title to the common stock, was affected by the provisions of the Act. Nor did the statute prevent him from selling the common stock. Only the right to retain a profit on the sale of common stock within the six months' period is affected by section 16(b).

Whether or not such statutory control is a violation of the due process guaranties of the Fifth Amendment was considered in Judge Clark's opinion in the Smolowe case, supra. He said that the statute in effect "was but a new approach to the common-law attitude which had long recognized the reasonableness of enforcing a level of conduct upon fiduciaries 'higher than that trodden by the crowd.' See Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1."

Defendants argued in their briefs that plaintiff lacked the capacity to sue in that she was not a stockholder of record at the time any claim might have arisen from the transactions in relation to the 342½ shares of common stock. Mr. David A. Schulte, in an affidavit dated April 3, 1945, had stated:

"(2) The following is a statement showing the dates of sale and the proceeds received by me with respect to the 342½ shares of common stock of Park & Tilford, Inc., sold by me within six months prior or subsequent to January 31, 1944. The prices set forth are the highest sales prices after eliminating the sales previously used in computing the amount of my payment to Park & Tilford, Inc., in the sum of $264,827.57.

| Date of Sale | No. of Shares | Proceeds |
|---|---|---|
| March 23, 1944 | 42–1/2 | $ 3,479.78 |
| March 25, 1944 | 200 | 16,699.60 |
| March 29, 1944 | 100 | 8,162.77 |
| | Total | $28,342.15 |

"(3) The average market quotation of Park & Tilford, Inc. common stock on January 31, 1944 was 76-5/16, which figure

multiplied by 342½ amounts to $26,137.03. The difference, therefore, between the value of the common stock received by me in conversion and the prices allocable to the sales thereof is $2,205.12."

All that section 16(b) requires is that the plaintiff be "the owner of any security of the issuer" (Park & Tilford, Inc.). She was thus qualified to act under section 16(b) at all times since March 10, 1944. I sought additional information as to Mr. Schulte's transactions, especially as to these 342½ shares.

In two later affidavits made by J. Donovan Pheifer (who states that he is familiar with the accounts of David A. Schulte including the accounts relating to the conversion of the preferred stock, the purchase of common stock and the sale of common stock for the period January 1, 1944 to July 31, 1944 in Park & Tilford, Inc., stock) the following sales are given: 42 shares of common at 91⅝, 100 shares at 91¾ and ½ share at 89¾, all on May 19, 1944. In an affidavit dated June 11, 1945, Mr. Pheifer states: "(2) Of the 342½ shares of common stock of Park & Tilford, Inc. received by Mr. David A. Schulte in January, 1944 upon conversion of the 274 shares of preferred stock of that company, Mr. Schulte sold 142½ on May 19, 1944. The remaining 200 shares are still owned and held by Mr. Schulte."

Schedule A annexed to Mr. Pheifer's affidavit of April 30, 1945, shows that on January 1, 1944, Mr. David A. Schulte owned 274 shares of preferred stock and 37,510 shares of common; that he purchased 1400 shares between January 17th and January 20th, 1944; that he converted his 274 shares of preferred into 342½ shares of common on January 31, 1944—a total of 39,252½ shares; and that between January 20, 1944, and May 29, 1944, he sold 36,842½ shares, and that he held from May 29, 1944, to July 31, 1944, the balance of 2410 shares.

I have tried to reconcile the data given in Mr. Schulte's affidavit and in Mr. Pheifer's affidavits, with the statement Mr. Schulte submitted to Park & Tilford, Inc., June 19, 1944, when he delivered to the corporation his check of $264,580.50, but I am unable to do so. But the effort has had at least this result that it convinced me that it would be unwise to attempt to dispose of this case piecemeal, granting partial summary judgment as to the 342½ shares, and severing the balance of plaintiff's claim for trial at a later term of the Court. While awaiting the additional data, set forth in Mr. Pheifer's affidavits, I gave consideration to the briefs of counsel and I reached certain conclusions which I embodied in the draft of an opinion. I think I should make them a matter of record. Further, by filing this opinion it will be made clear that the plaintiff's motion is denied, not because I believe her claim to be without merit, but because the best interests of the plaintiff and the corporation will be served by trying all the issues, especially as to the defendant Schulte's profits, at one time. Motion denied; submit order on two days' notice.