**BLAU v. MISSION CORP. et al.**

United States District Court
S. D. New York.

June 19, 1953.

154

Morris J. Levy, New York City, for plaintiff.

Leve, Hecht, Hadfield & McAlpin, New York City (David S. Hecht and C. Lansing Hays, Jr., New York City, of counsel), for defendant Mission Corp.

MURPHY, District Judge.

These are cross-motions for summary judgment in an action arising out of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(a, b) imposing liability for profits realized from so-called "short-swing" transactions upon owners of more than ten per cent of securities, in favor of the corporation in whose shares such trading occurs. Plaintiff moves for summary judgment contending that there is no genuine issue of fact, except for the amount of damages. Defendant Mission Corporation, agreeing that there is no such issue, moves by cross-motion for summary judgment dismissing the complaint. The facts have been stipulated and are supported by copies of documents filed with the Securities and Exchange Commission.

These facts briefly indicate two exchanges of Tide Water Associated Oil Company (hereafter called Tide Water) shares between defendant Mission Corporation (hereafter called Mission) and Mission Development Corporation (hereafter called Development), a subsidiary of Mission created for the purpose of holding the Tide Water shares involved in these transactions and the purchases of Tide Water shares in the market by Mission. The statute in question, 15 U.S.C.A. § 78p(b, a), was enacted, according to its own recital, "For the purpose of preventing the unfair use of information which may have been obtained by [a] beneficial owner [of more than 10 per centum of any class of any equity security] by reason of his relationship to the issuer". By way of remedy, the statute continues, "any profit realized by him from any purchase and sale, or any sale and purchase * * * within any period of less than six months, * * * shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner * * * in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months." The statute does not "cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved". Suit to recover such profit may be instituted under the statute "by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request * * * but no such

suit shall be brought more than two years after the date such profit was realized." Plaintiff, purchaser of ten shares of the common stock of Tide Water on November 8, 1950, brings this action on February 1, 1951, in its behalf on the theory that "sales" of Tide Water stock were made by Mission in its exchanges with Development, and also that purchases of Tide Water stock were thereafter made by Mission, from which Mission realized profits.

The first exchange of shares between Mission and Development occurred pursuant to agreement made on December 4, 1948. At that time, Mission owned 1,416,693 shares of the common stock of Tide Water, which was more than 10 percent of the total such issue outstanding. Apparently Mission intended to keep this block intact and add to it so as to acquire control of Tide Water. On November 28, 1948, Mission organized Development, and by agreement with it on December 4, undertook to transfer to Development the shares of Tide Water held by Mission in exchange for shares of common stock of Development, the rate of exchange being two shares of Development to one of Tide Water. This agreement was approved by the Securities and Exchange Commission pursuant to provisions of the Investment Company Act of 1940, 15 U.S.C.A. § 80a–1 et seq. On December 17, 1948, in Wilmington, Delaware, Mission delivered the 1,416,693 shares of Tide Water owned by it, with duly executed stock powers attached, to Development, which, in turn, issued 2,833,386 shares of its common stock to Mission in exchange therefor. Development then became a wholly-owned subsidiary of Mission and Development's sole asset consisted of the shares of Tide Water thus transferred.

Thereafter, Mission purchased shares of Tide Water common stock in the market and continued such purchases intermittently until January 5, 1951, by which date it owned 1,050,420 shares of Tide Water.

By June 16, 1949, Mission had increased its direct holdings of Tide Water to 3.1 percent of the 6,396,809 shares of Tide Water then issued and outstanding. It had distributed on December 28, 1948, as a stock dividend, 458,048²⁰⁄₉₀ shares of Development and on May 2, 1949, 687,072³⁰⁄₉₀ shares, thus decreasing its holdings in Development to approximately 60 percent of the shares of Development then issued and outstanding.

During the six month period from December 17, 1948 to and including June 16, 1949, purchases were made on the New York Stock Exchange at prices prevailing thereon, except for purchases of 49,500 shares on February 15, 1949, and 22,300 shares on February 17, 1949.

Mission continued its purchases of Tide Water so that by July 18, 1950 it owned 818,000 shares of Tide Water, representing 12.8 percent of such shares then issued and outstanding, and on January 17, 1951, 1,050,-420 shares of Tide Water, representing 16.5 percent.

The second such exchange at the same rate and with similar approval of the Securities and Exchange Commission occurred at the same place on January 17, 1951. This involved delivery by Mission to Development of 1,050,420 shares of Tide Water, in exchange for 2,108,040 shares of Development.

Defendant's grounds for dismissal of the complaint consist of (1) lack of venue because defendant Mission Corporation cannot be found, is not an inhabitant and does not transact business, nor, defendant alleges, have any of the acts complained of occurred within this judicial district; (2) plaintiff has failed to comply with rule 23(b), Federal Rules of Civil Procedure, 28 U.S.C.A., as well as § 327 of the General Corporation Law of Delaware in that plaintiff was not the owner of any security of Tide Water on the date of the transactions complained of; (3) the two year time limitation, measured from the date of commencement of the action on February 1, 1951, excludes any alleged profits realized on purchases made prior to February 1, 1949, as well as those claimed to be connected with the exchange of December 17, 1948; (4) there was no "realization" of profits, if any in fact exist, since defendant never parted with beneficial ownership of the shares; and (5) there was no sale of the securities in question within the provisions of the Securities and Exchange Act.

■ On oral argument defendant has conceded lack of authority to support the first three of these grounds: with respect to the first, cf. Gratz v. Claughton, 2 Cir., 187 F.2d 46, certiorari denied 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353; as to the second, cf. Kogan v. Schulte, D.C.S.D.N.Y., 61 F.Supp. 604, affirmed, sub. nom. Park & Tilford, Inc., v. Schulte, 2 Cir., 160 F.2d 984, certiorari denied 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347; Pellegrino v. Nesbit, 9 Cir.; 203 F.2d 463, 466; and concerning the third ground, since concededly some of the transactions occurred subsequent to February 1, 1949, this matter would properly affect the amount of damage and not the question of liability raised by these motions.

The critical question for purpose of these motions is raised by defendant's fourth and fifth grounds. The statute in question requires for its violation both (1) that the person be "directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security", 15 U.S.C.A. § 78p(a); and (2) some "profit realized by him from any purchase and sale, or any sale and purchase, of any equity security * * * within any period of less than six months," Id. § 78p(b).

With respect to the first requirement, both sides concede that on December 17, 1948, immediately prior to the first exchange between Mission and Development, involving 1,416,693 shares of Tide Water and twice as many shares of Development, Mission owned directly about 22 percent of Tide Water common stock. But within the six month period immediately following the exchange, Mission's direct ownership of Tide Water fell below the required 10 percent, while that of its subsidiary, Development, rose to about 22 percent. By dint of its conceded control of Development, plaintiff strenuously insists that Mission was during this period the beneficial owner, albeit indirectly, of more than 10 percent of Tide Water common stock. The fact that ownership of these shares of Tide Water was once removed from Mission and vested directly in Development is of no consequence, it is urged by plaintiff, since Mission "was in fact Development's *alter ego*. Thus, defendant, Mission, was 'indirectly the bene-

ficial owner of more than 10 per centum' of Tide Water's equity securities between December 17, 1948 and June 15, 1949 in accordance with the provisions of Sections 16(a) and 16(b) of the Securities Exchange Act of 1934."

■ Certainly for transactions involving Tide Water for the six month period after December 17, 1948, this characterization of Mission as the *alter ego* of Development is crucial for plaintiff's case in order to meet the ten percent requirement of the statute. Accepting this characterization of the relationship between Mission and Development generally for the entire period involved, however, a "purchase and sale, or any sale and purchase, of any equity security" of Tide Water by Mission must still be established. Purchases of Tide Water shares by Mission are conceded; but their transfer to Development by Mission in exchange for shares of Development cannot be characterized as a "sale". This is so as long as Mission remains identified as the *alter ego* of Development since it is semantically straining, to say the least, to label as "sale" an exchange by a single personality of its assets from one of its pockets to another. What might be the case concerning the exchange absent this characterization of the relationship between Mission and Development is a question which cannot be presented in this case. Plaintiff must insist upon such characterization to meet the "insider" qualification for Mission of ownership of more than 10 percent of Tide Water's shares. The dilemma arises from the necessity of abandoning such characterization in order to cast the exchange between Mission and Development in the role of "sale". But the *alter ego* characterization is a double-edged sword; if it is appropriate for purpose of ownership qualification, it cannot be less so to determine whether an exchange is a sale. Either this characterization is proper for both purposes or for none. There can be no *tertium quid*.

■ Apart from the relationship between the putative "vendor" and "purchaser" in this exchange, other considerations cast doubt upon its classification as a "sale". Not every transfer of shares be-

tween even separate and independent entities may be considered a "sale" for purpose of the provisions of the statute in question, at least not, for example, transfers in the nature of gifts. See Truncale v. Blumberg, D.C.S.D.N.Y., 80 F.Supp. 387; Shaw v. Dreyfus, 2 Cir., 172 F.2d 140. It is questionable whether profits, if there were any involved, had been "realized", as required by the statute, if the analogy of profit in income taxation were accepted. See Gutbro Holding Co. v. Commissioner of Internal Revenue, 2 Cir., 138 F.2d 16. And in the stipulated facts in the instant case there is no showing that the mischief at which the statute aims, viz., "preventing the unfair use of information which may have been obtained by such beneficial owner [of more than 10 per centum of any class of any equity security]", 15 U.S.C.A. § 78p(b, a), existed by virtue of Mission's interest, direct or indirect, in Tide Water, or how "inside" information could have been helpful to anyone in realizing a profit in the transactions under consideration.

Accordingly, plaintiff's motion for summary judgment is denied; defendant Mission Corporation's cross-motion for summary judgment dismissing the complaint is granted.