**BLAU  v.  MISSION CORP. et al.**
**No. 74, Docket 22804.**

United States Court of Appeals
Second Circuit.

Argued Dec. 18, 1953.

Decided Feb. 24, 1954.

On Rehearing April 19, 1954.

Writ of Certiorari Denied
June 7, 1954.

See 74 S.Ct. 872.

Morris J. Levy, New York City, for plaintiff-appellant.

David S. Hecht, New York City (Leve, Hecht, Hadfield & McAlpin, Barnabas B. Hadfield, and C. Lansing Hays, Jr., New York City, on the brief), for defendant-appellee Mission Corp.

Before CLARK, FRANK, and HINCKS, Circuit Judges.

CLARK, Circuit Judge.

This appeal brings before us once again the construction of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), providing for the recovery for the benefit of a corporation of so-called "short-swing profits" realized by an "insider" upon dealing in its stock.

On December 17, 1948, defendant Mission Corporation, pursuant to a plan to gain control over (nominal) defendant Tide Water Associated Oil Company, had acquired 1,416,693 shares of Tide Water's common stock, which was more than 10 per cent of the total shares outstanding. On that day Mission transferred this block of stock to the recently organized Mission Development Company in return for newly issued shares of Development's stock at the ratio of 2 shares of Development for 1 share of Tide Water. At the close of the transaction Development held the Tide Water stock as its sole asset, while Mission held all of the outstanding Development stock comprising 2,833,386 shares.

Thereafter, and within six months of the aforementioned exchange, Mission commenced purchasing Tide Water shares in the market, and continued to purchase such shares intermittently until on January 17, 1951, it owned 1,050,-420 shares. Meanwhile, on December 28, 1948, and on several subsequent occasions Mission distributed portions of its Development shares as dividends to its own stockholders; and these were promptly traded and sold in the open market. On March 1, 1949, Development common was listed on the New York Stock Exchange and has been freely traded there ever since. On January 17, 1951, there were 1,832,192 such Development shares publicly held.

On January 17, 1951, Mission and Development underwent a second exchange at the same rate, Mission giving up 1,-050,420 shares of Tide Water and receiving 2,100,840 new shares of Development. Development's assets still consisted solely of the Tide Water stock received in the two exchanges and an insignificant amount of cash. Plaintiff asserts that the exchanges were "sales" by Mission, that they were accompanied by purchases within the six-month period prescribed by § 16(b), and that the resulting "profit" accrued to and should be recovered by Tide Water. This is contested by defendant Mission, whose main position was supported by Judge Murphy below in an opinion reported in D.C.S.D.N.Y., 113 F.Supp. 153.

Mission first raises several procedural objections which may be quickly settled. Some of the transactions occurred in the Southern District of New York, and hence venue was properly laid there under Falco v. Donner Foundation, Inc., 2 Cir., 208 F.2d 600, and Gratz v. Claughton, 2 Cir., 187 F.2d 46, certiorari denied 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353. The complaint is not defective for failure to allege that plaintiff was a shareholder at the time of the transaction complained of in accordance with Fed.Rules Civ.Proc., rule 23(b), and Del.General Corporation Law, 8 Del.C. § 327; those provisions, directed particularly to the shareholder's derivative action to recover for misdeeds of corporate officials, cannot, even if so perhaps intended, override the direct mandate of § 16(b) that suit may be brought "by the owner of any security" without qualification. Pellegrino v. Nesbit, 9 Cir., 203 F.2d 463; Park & Tilford, Inc., v. Schulte, 2 Cir., 160 F.2d 984, certiorari denied Schulte v. Park & Tilford, Inc., 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347; Kogan v. Schulte, D.C.S.D.N.Y., 61 F.Supp. 604. Nor is the action barred by the two-year statute of limitations (though it may limit recovery), since some of the transactions took place with-

in two years of the commencement of this action. Accordingly we turn to the merits.

■ Section 16(a), 15 U.S.C. § 78p(a), defines an insider as "[E]very person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security * * *." There can be no doubt that Mission, by virtue of its absolute control of Development, was indirectly the owner of all Tide Water stock held by Development and was therefore an insider throughout the period in issue. The question then arises as to whether the two exchanges between Mission and Development were "sales" within § 16 (b)'s restriction of "any purchase and sale, or any sale and purchase, * * * within any period of less than six months." The argument is strongly pressed, and apparently found favor below, that they were not. As to the first exchange, this seems quite correct. Development was at the time wholly owned by Mission; and the transaction was, we think, a mere transfer between corporate pockets. To hold otherwise would be to place entirely undue stress on the corporate fiction reaching harsh and wooden results quite unnecessary to achieve the purposes of the act. Until, going beyond the corporate forms, some new individuals entitled to share in the ultimate profits enter the picture there has been no real sale of stock.

The second exchange is somewhat more complicated, due to the substantial public ownership of Development stock. At the close of the transaction Mission owned 60 per cent. of Development and hence obviously did not relinquish actual control of the Tide Water block of stock. Nor did it alter its beneficial interest in Tide Water, for the second exchange was conducted at the same 2-shares-for-1 rate and (as is mathematically demonstrable) it received in indirect interest exactly what it gave up in direct interest. Accordingly there are persuasive features to the argument that Mission parted with nothing but technical title, which cannot be deemed such a final disposition of the stock as to constitute a "sale."

■ Defendant Mission seeks further support for this position in § 112(b) (5) of the Internal Revenue Code, 26 U.S.C. § 112(b) (5), which provides:

"(5) *Transfer to corporation controlled by transferor.* No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; * * *."

Of course income tax rules cannot control actions under § 16(b). Smolowe v. Delendo Corp., 2 Cir., 136 F.2d 231, 238, 148 A.L.R. 300, certiorari denied Delendo Corp. v. Smolowe, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446. We are not, however, precluded from considering them; and the quoted section of the Revenue Code is obviously some support for the contention that the disposition and the profit are not yet final. Compare Gutbro Holding Co. v. C. I. R., 2 Cir., 138 F.2d 16.

■ To continue the argument, Development was a nondiversified, closed-end management investment company, subject to the provisions of the Investment Company Act of 1940, 15 U.S.C. § 80a—1 et seq.; and because of its affiliation with Mission, both exchanges came within the prohibition of inter-affiliate transactions contained in § 17 (a) (1) of that act, 15 U.S.C. § 80a—17(a) (1), unless exempted by the Commission pursuant to § 17(b), 15 U.S.C. § 80a—17(b). Both exchanges were granted exemptions by the Commission after full disclosure of the facts and after due consideration. We recognize the force of these contentions, but nevertheless must note the immediate purpose of the sections just cited to prevent overreaching of controlled corporations. Though the provisions do insure fair prices in the transactions, they cannot be taken as finally determinative of issues arising under § 16(b).

The district court ruled that any Mission control of Development sufficient to

make Mission a beneficial owner of the Tide Water stock was also enough to bar a finding of "sale" in the transfers to Development. As the judge reasoned, either Mission was not an insider or there was no "sale." As we have stated, we think Mission was an insider. But even so, we do not regard this conclusion as settling whether Mission had made "sales" in the statutory meaning of the term. It is obvious that the proposed rule has numerous ramifications, not all of which are readily foreseeable. Notwithstanding the force of the arguments which we have stated, it is obvious that to accept them we must read a very serious limitation on the normal meaning of sales as between intercorporate entities. In previous decisions involving the interpretation of this remedial statute we have been aided by detailed expositions of relevant factors by the Securities and Exchange Commission as *amicus curiae*, and we regret the lack of their aid in this case. Accordingly we proceed with due caution in venturing upon uncharted seas.

■ It seems one thing to hold, as we have done, that the first transaction was mere bookkeeping without the reach of the statute; for at that time there was no existing market for Development stock and no public ownership of its stock, which was entirely held by its parent. But in 1951 the situation was changed and Development was no longer just an alter ego of Mission. Its shares were freely traded; and though their intrinsic value was absolutely tied to the underlying Tide Water stock, they continually sold at prices involving a substantial differential. In fact they sold at a discount, but they could equally well have sold at a premium. Mission therefore received for its Tide Water stock securities which were readily salable and of independent market value. On January 17, 1951, the market value of Development was $15½ and at the 2-for-1 ratio Mission received $31 of realizable value for each share of Tide Water. Since some of the Tide Water was purchased at prices as low as $27, we are constrained to hold the difference a

"profit" from a "sale" and therefore accruing to the issues.

Mission argues that its commitment in Tide Water has in no way been reduced by the transaction. But reduced or not, the ownership has been one step removed and the intervening Development stock is independently valuable. It is not beyond conceit that an insider would possess information which when publicly released would depress Tide Water prices while enhancing those of Development. Moreover, if Mission were to receive stock in an exchange such as this, and thereafter sell it within six months, we have no doubt that the exchange would be a "purchase" within § 16(b). See Park & Tilford, Inc., v. Schulte, supra, 2 Cir., 160 F.2d 984. Accordingly we hold that the second exchange in issue was a "sale" at $31 per share, and Mission must account for "profits" over its purchase price properly computed.

■ Plaintiff asserts that the "sale" price should be computed at $35½, the value of the Tide Water stock at the time of the exchange. He relies on our holding in Park & Tilford, Inc., v. Schulte, supra; but we think this not in point. In that case defendant exchanged convertible preferred stock for somewhat more valuable common shares. We held that the exchange was a *purchase*, and the value or *purchase* price must be determined by looking to the consideration parted with. The case at bar involves a *sale*, and we look to the consideration received. The *sale* price is therefore the $31 stipulated value of Development stock.

This conclusion makes it necessary that the action be remanded to the district court for calculation of "profits" on this transaction, making due allowance for expenses, in accordance with the familiar rule of Smolowe v. Delendo Corp., supra, 2 Cir., 136 F.2d 231.

Judgment affirmed in part and reversed in part; action remanded.

On Petition for Rehearing

PER CURIAM.

On this petition for rehearing the court, after examining the respective

contentions of the parties, reaffirms its opinion in the analysis and application there made of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p (b). See also Roberts v. Eaton, 2 Cir., 212 F.2d 82.

With respect to questions to be settled on the remand, the parties have divided sharply as to the value of the substantial block of Development stock received in the transfer and as to the expenses of the transfer, as by registration of the stock or otherwise. We think these issues should be resolved by the district court, and our direction for remand is modified to permit of hearing and findings anew on this issue. The value to be found is the market value of this block of Development stock; expenses are those actually incurred, and not mere possibilities such as might have been incurred had equivalent stock been sold in the market; and any award, if made, should bear interest from the time of sale.

The petition for rehearing is granted, and the opinion and decision is modified to the extent herein stated; in all other respects it is reaffirmed.