Mark **DOTTENHEIM**, Appellant,

v.

Clint W. **MURCHISON**, Jr., et al.,
Appellees.

No. 15506.

United States Court of Appeals
Fifth Circuit.

Dec. 13, 1955.

Rehearing Denied Jan. 15, 1956.

Barefoot Sanders, Harold B. Sanders, Dallas, Tex., for appellant.

Donald G. Gay, Franklin E. Spafford, Dallas, Tex., Cooper K. Ragan, Houston, Tex., for appellees.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

We are here called upon to determine whether a stockholder who sues on behalf of his corporation to recover "short-swing" profits of a "beneficial" owner of stock in the corporation, as authorized under Section 16(b) of the Securities Exchange Act of 1934,[1] must allege that

1. "Sec. 16. (a) Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered on a national securities exchange, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security or within ten days after he becomes such beneficial owner, director, or officer, a statement with the exchange (and a duplicate original thereof with the Commission) of the amount of all equity securities of such issuer of which he is

the beneficial owner, and within ten days after the close of each calendar month thereafter, if there has been any change in such ownership during such month, shall file with the exchange a statement (and a duplicate original thereof with the Commission) indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month.

"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of

738

he was such stockholder at the time of the transactions complained of as required by Rule 23(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in the case of "an action brought to enforce a secondary right on the part of one or more shareholders * * *."[2]

The trial court decided this question in the affirmative and dismissed the complaint which sought recovery of profits allegedly reaped by the individual defendants from purchase and sale of stock in the defendant Kirby Petroleum Company, in which they owned more than 10% of the common stock, the said stock being listed on the American Stock Exchange in New York, a national securities exchange.

Appellant, citing Blau v. Mission Corp., 2 Cir., 1954, 212 F.2d 77, 79, certiorari denied 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138; Pellegrino v. Nesbit, 9 Cir., 1953, 203 F.2d 463, 466; and Benisch v. Cameron, D.C.S.D.N.Y.1948, 81 F.Supp. 882, asserts that these are the only court decisions precisely in point,

and that they all support his thesis that Rule 23(b) does not apply to an action brought by a security holder under Section 16(b) of the Securities Exchange Act.

Appellees, conceding that these are the only judicial pronouncements on the point in issue, say, first, that these cases are bad law, and they then conclude by characterizing them as an abandonment of "the morality of which the equity rules and the FRCP were born," resulting from either "zeal for social ideology. or other misguided motives." Such extravagance of expression detracts from what is otherwise an excellent exposition of appellees' theory of the law.

■ The rules of law applicable to this case are neither complicated nor unusual. The statute here involved creates a new cause of action, which, while similar in some respects to a secondary or derivative right, is not such a right at all. It is in reality a primary right. This is so because the statute which creates it makes it so. The only actions re-

his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the . security purchased or of not repurchasing the security sold for a period exceeding six months. *Suit to recover such profit may be instituted at law or in equity* in any court of competent jurisdiction by the issuer, or *by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request* or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security

involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." (Emphasis supplied.) 15 U.S. C.A. § 78 p (a) and (b).

2. F.R.C.P. Rule 23(b) "Secondary Action by Shareholders. In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

ferred to in the rules on which appellees so strongly rely are the equitable actions in which a stockholder is permitted to proceed on behalf of himself and others similarly situated to compel a corporation to take action against those who, by reason of their control of the corporate machinery or corporate policies, are abusing their position of trust or are taking advantage of inside knowledge for their own benefit. This type of action, long recognized as a creature of equity, was described by Mr. Justice Jackson in his opinion in Koster v. Lumbermens Mutual Co., 330 U.S. 518, on page 522, 67 S.Ct. 828, on page 830, 91 L.Ed. 1067 where he said:

"The stockholder's derivative action, to which this policyholder's action is analogous, is an invention of equity to supply the want of an adequate remedy at law to redress breaches of fiduciary duty by corporate managers. Usually the wrongdoing officers also possess the control which enables them to suppress any effort by the corporate entity to remedy such wrongs. Equity therefore traditionally entertains the derivative or secondary action by which a single stockholder may sue in the corporation's right when he shows that the corporation on proper demand has refused to pursue a remedy, or shows facts that demonstrate the futility of such a request. With possible rare exceptions, these actions involve only issues of state law and, as in the present case, can get into federal courts only by reason of diversity in citizenship of the parties. Their existence and peculiar character were recognized by this Court in the old Equity Rules. Rule 27, 226 U.S.App., p. 8."

It should be observed here that the complaint in the case before the court was not brought in the federal court on the diversity of citizenship grounds, but it alleged that jurisdiction was "invoked under Section 27 of the Securities Exchange Act of 1934." Such jurisdiction was not challenged by appellees. There being no allegation of diversity of citizenship as between plaintiff and defendants, the only cause of action alleged must, therefore, of necessity have been the statutory right established by the Securities Exchange Act.

That this is an entirely new cause of action created by the statute is further demonstrated by the terms of § 78aa, which provide that the District Courts of the United States shall have exclusive jurisdiction of violations of Section 78, and of all suits "brought to enforce any liability or duty created" thereby. There is, of course, no such provision as to an ordinary secondary or derivative action by a stockholder, which, as pointed out by Mr. Justice Jackson above, is ordinarily based on state jurisprudence. The plaintiff below, the defendants and the Court all proceeded on the theory that the cause of action sued on was created by the Securities Exchange Act. This being so, we take the same view of it, and find that this law created a right in the plaintiff that is neither derivative nor secondary in the sense in which that term is used in the Rule.

Appellees contend that Rule 23(b), requiring that in secondary actions by stockholders, the complaining party must allege stock ownership at the time of the transaction of which he complains, was adopted with the force of law subsequent to the passage of the Securities Exchange Act and that the repealer section of the Rule-Making Statute struck down any conflicting prior law;[3] that there is a conflict between the rule and the prior statute and that the statute must yield to the rule. The fallacy of this argument is that, as we construe the statute and the rule, there is no conflict. This is

---

**3.** 28 U.S.C.A. (1927) § 723b, now 28 U.S.C.A. § 2072, provides that "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

implicit in the court's opinion in the Pellegrino case, supra.[4]

In the case of Benisch v. Cameron, supra, the District Court for the Southern District of New York passed on this precise point and held that such a suit is not subject to the procedural requirements of the Rule 23(b).[5]

In Blau v. Mission Corp., supra,[6] also relied on by appellant, the court dealt with this matter. It lightly brushed aside the contention there made that Rule 23(b) was applicable to a situation like the present. The opinion stated:

> "The complaint is not defective for failure to allege that plaintiff was a shareholder at the time of the transaction complained of in accordance with Fed.Rules Civ.Proc., rule 23(b), and Del. General Corporation Law, 8 Del.C. § 327; those provisions, directed particularly to the shareholder's derivative action to recover for misdeeds of corporate officials, cannot, even if so perhaps intended, override the direct mandate of § 16(b) that suit may be brought 'by the owner of any security' without qualification. Pellegrino v. Nesbit, 9 Cir., 203 F.2d 463; Park & Tilford, Inc., v. Schulte, 2 Cir., 160 F.2d 984, certiorari denied Schulte v. Park & Tilford, Inc., 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347; Kogan v. Schulte, D.C.S.D.N.Y., 61 F.Supp. 604."

---

4. There, although the precise question was not before the court for decision, it was said:

   "Section 16(b) establishes a statutory policy intended to prevent the abusive practices which were found to result from short-swing insider trading of securities, practices which are harmful both to the other stockholders and to the general public. See Sen.Rep. No. 1455, 73d Cong., 2d Sess. (1934). To the extent the statute is intended to protect the public from market fluctuations intentionally caused by or within the prior knowledge of corporate insiders seeking short-swing profits, the plaintiff in a § 16(b) suit is merely an instrument for effectuating the statutory policy. The statute states that where an issuer fails to bring suit within sixty days after request or fails diligently to prosecute the same thereafter 'the owner of *any* security of the issuers' (italics ours) may institute suit. Such suit is 'in behalf of the issuer' rather than for the personal benefit of the stockholder plaintiff. Thus the stockholder need not have owned stock at the time the transaction of which he complains took place. Benisch v. Cameron, D.C.S.D.N.Y.1948, 81 F.Supp. 882. * * *" Pellegrino v. Nesbit, 203 F.2d 463, 466.

5. "Although the right of action created by Section 16(b) is somewhat akin to the ordinary stockholder's derivative suit, it is plain from the reasons set forth in Section 2 of the Act, 15 U.S.C.A. § 78b, and in the preamble to Section 16(b), that it was primarily intended as an 'instrument of a statutory policy of which the general public is the ultimate beneficiary. Congress did not intend procedural restrictions to hamper such policy.

   "A further manifestation of this purpose is evident from the fact that suit might be instituted by any 'security' holder of the issuer. And 'security' is defined in Section 3, 15 U.S.C.A. § 78c, as 'any note, stock, treasury stock, bond, debenture, certificate of interest, or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.'

   "Congress, therefore, could never have intended compliance with Rule 23(b) as a prerequisite to suit because the 'security' holders authorized to sue under 16(b), other than a shareholder, cannot, by reason of their status, make the averment required by Rule 23(b)." Benisch v. Cameron, D.C.S.D.N.Y., 81 F.Supp. 882, 884.

6. Blau v, Mission Corp., 2 Cir., 212 F.2d 77, 79.

It is not clear whether the court based its decision on the inefficacy of the Rule-Making Statute to repeal the specific provisions of a conflicting statute, or on some other ground. However, we do not reach that question because we hold that there is no conflict between the rule and the law.

Appellant alleged a cause of action under the applicable section of the Securities Exchange Act, and it was error for the court to dismiss his complaint. The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.