**Isadore BLAU, Plaintiff,**

v.

**Laurent OPPENHEIM, Jr., M & T Chemicals, Inc., Hanson-Van Winkle Munning Company and American Can Company, Defendants.**

United States District Court
S. D. New York.

Feb. 21, 1966.

65 Civil 2719.

882

Morris J. Levy, New York City, for plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant Laurent Oppenheim, Jr., Edward J. Reilly, Jr., Adlai S. Hardin, Jr., New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants M & T Chemicals, Inc. and American Can Co., Edward N. Sherry, New York City, of counsel.

Philip A. Loomis, Jr., Gen. Counsel, Walter P. North, Associate Gen. Counsel, Ellwood L. Englander, Asst. Gen. Counsel, Daniel J. Goldberg, Washington, D. C., of counsel, for Securities and Exchange Commission, amicus curiae.

WEINFELD, District Judge.

The defendant, Laurent Oppenheim, Jr., moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim. The action was commenced under section 16(b) of the Securities Exchange Act of 1934 [1] to recover "short-swing profits" allegedly realized by the defendant in sales and purchases of common stock of Hanson-Van Winkle Munning Company (Van Winkle). The motion rests upon the failure of the plaintiff to allege that he was a shareholder of Van Winkle at the time of the transactions, as required by Rule 23(b) of the Federal Rules of Civil Procedure in the instance of derivative actions.[2]

---

1. 15 U.S.C. § 78p(b).

2. "SECONDARY ACTION BY SHAREHOLDERS. In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce

The essential facts as alleged by plaintiff are that between July 9, 1963 and September 12, 1963 the defendant, then a director and officer of Van Winkle, sold 3,154 shares of its stock and purchased 6,000 shares, resulting in short-swing profits within the meaning of section 16(b). One year later, in September 1964, Van Winkle sold and transferred all its assets and choses in action to M & T Chemicals, Inc. (M & T), a wholly owned subsidiary of American Can Company (American), and M & T assumed all the liabilities of Van Winkle. The consideration for the transfer was the delivery by American of a specified number of its shares to Van Winkle, which then distributed the American shares to its stockholders, whereupon Van Winkle was merged into M & T and ceased to exist as a public holding company upon its dissolution.[3]

The plaintiff did not own any shares of Van Winkle during its existence. He first acquired his shares of American in the open market in 1965. In August 1965 he served a formal demand upon American that it or M & T, its wholly owned subsidiary, institute suit against Oppenheim to recover the short-swing profits realized by him in the Van Winkle transactions from July to September 1963, pointing out that the statute of limitations was about to expire. In the absence of a reply, he commenced this action [4] on behalf of himself and other stockholders of American and in the right of American, M & T and Van Winkle. Jurisdiction is asserted under section 16(b),[5] which authorizes suit to recover short-swing profits by the issuer or upon its failure or refusal, by "the owner of any security of the issuer," and section 27 of the 1934 Act,[6] which confers upon the district courts exclusive jurisdiction of such suits.

The defendant readily acknowledges that the courts uniformly have held that in a section 16(b) suit brought on behalf of an issuer Rule 23(b) is inapplicable and the security holder need not allege that he was such at the time of the transactions which gave rise to the suit.[7] However, he urges that those authorities are inapplicable since in each the plaintiff admittedly was a shareholder of the

rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

3. Defendant challenges that a merger was effected by the transaction, but for the purposes of this motion the allegations of the complaint must be accepted. In any event, the basic transaction is not in dispute since defendant in his answer alleges that the assets and choses in action of Van Winkle were sold and transferred to M & T in consideration for the delivery by American to Van Winkle of shares

of American common stock and the assumption by M & T of Van Winkle's liabilities.

4. One day later plaintiff was informed that neither American nor M & T contemplated any action against Oppenheim, Jr.

5. 15 U.S.C. § 78p(b), which in pertinent part provides: "For the purpose of preventing the unfair use of information which may have been obtained by such * * * director, or officer [of the issuer] by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer * * * within any period of less than six months * * * shall inure to and be recoverable by the issuer * * *. Suit to recover such profit may be instituted * * * by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer * * *."

6. 15 U.S.C. § 78aa.

7. See Dottenheim v. Murchison, 227 F.2d 737 (5th Cir.), cert. denied, 351 U.S. 919, 76 S.Ct. 712, 100 L.Ed. 1451 (1956);

"issuer" whose stock was traded and yielded the short-swing profits, whereas here the plaintiff was never a stockholder of Van Winkle. He stresses the fact that no action has been brought either by Van Winkle ("if indeed it still exists"), by any owner of its securities, by M & T, the successor corporation, or by M & T's parent, American. Accordingly, the defendant contends that plaintiff's action is essentially derivative and, absent compliance with the contemporaneous ownership requirement of Rule 23 (b), must be dismissed. The plaintiff and the Securities and Exchange Commission, which has submitted an amicus curiae brief, take a contrary view and in substance urge that upon the facts here presented the word "issuer" is broad enough to include both M & T and, since it is without security holders, its parent, American.

Essentially, however stated, the question presented is whether upon a transfer by an issuer, as defined in the Act, of all its assets and choses in action to another corporation with which it is merged or, as in this instance, to a wholly owned subsidiary of another corporation, a security holder of the surviving corporation or of its parent may, upon the failure of either to do so, bring an action under section 16(b) to recover short-swing profits which had accrued to the issuer without compliance with the contemporaneous ownership provision of Rule 23 (b) of the Federal Rules of Civil Procedure. I hold that the action may be maintained.

It may be acknowledged at once that upon a strict or literal reading of section 16(b) plaintiff never was "the owner of any security of the issuer," Van Winkle; but this hardly resolves the problem, since the question still remains whether "issuer," defined in the Act as one "who issues or proposes to issue any security," [8] is broad enough to embrace an issuer's successor in interest or a surviving corporation to which has been transferred all its assets, properties and choses in action.

While the courts may not give content to an act beyond its language, they are required to construe it in consonance with its clearly defined and avowed objective, and to carry out the Congressionally declared purpose. The purpose of section 16(b), enacted upon the basis of overwhelming evidence of widespread abuses by corporate fiduciaries, is succinctly set forth in the law itself as "preventing the unfair use of information" by insiders and thereby protecting the public and outside stockholders.[9] The statute has been held to be remedial and "hence subject to that interpretation most consistent with the legislative purpose * * *." [10] Just as the Supreme Court has not hesitated to give strained meaning to a word "in the candid service of avoiding a serious constitutional doubt," [11] so, too, the courts have not hesitated to define words broadly to assure the legislative purpose where otherwise a strict or literal definition would have defeated the purpose. The courts, particularly in our circuit, have consistently interpreted section 16(b) in "the broadest possible" [12] terms in order not to defeat its avowed objective, resolving all doubts and ambiguities against

Blau v. Mission Corp., 212 F.2d 77, 79 (2d Cir.), cert. denied, 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138 (1954); Blau v. Albert, 157 F.Supp. 816, 818 (S.D.N.Y.1957); Benisch v. Cameron, 81 F. Supp. 882 (S.D.N.Y.1948).

8. Securities Exchange Act of 1934 § 3(a) (8), 15 U.S.C. § 78c(a) (8).

9. See Magida v. Continental Can Co., 231 F.2d 843, 846 (2d Cir.), cert. denied, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956); Pellegrino v. Nesbit, 203 F.2d 463, 466, 37 A.L.R.2d 1296 (9th Cir.

1953); Smolowe v. Delendo Corp., 136 F.2d 231, 235, 148 A.L.R. 300 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).

10. Adler v. Klawans, 267 F.2d 840, 844 (2d Cir. 1959).

11. United States v. Rumely, 345 U.S. 41, 47, 73 S.Ct. 543, 546, 97 L.Ed. 770 (1953).

12. Truncale v. Blumberg, 80 F.Supp. 387, 390 (S.D.N.Y.1948) (dictum).

insiders.[13] Thus, a voluntary conversion of convertible preferred stock into common has been held a "purchase";[14] so, too, a "purchase" was held to have been effected when an insider received stock of a parent corporation in exchange for his stock in a subsidiary under a plan of corporate simplification which permitted the stockholder to receive cash instead of the stock;[15] also, a receipt of warrants by an officer pursuant to his contract of employment has been described as a "purchase."[16] Similarly, a transfer of shares from one corporate officer to another in payment of a pre-existent debt has been held a "sale";[17] a person performing the functions of a corporate officer, although not officially one, has been held an "officer";[18] and a purchaser of corporate stock who was not a director of the corporation at the time of his purchase but became one prior to reselling the stock has been held to the same liability as one who had at all times been a director.[19] Against this background we consider the issue.

Preliminarily it should be emphasized that strictly speaking a section 16(b) suit to recover short-swing profits is not derivative, although some of the cases so describe it,[20] but one to enforce a primary right created by the Act in favor of the issuer as well as its security holders.[21] The issuer, by reason of this right of action, is the "instrument, sometimes unwilling,"[22] for enforcing the statutory policy. And when the issuer fails to assert the right, the security holder may enforce it. The section, designed, as the courts have held, "to squeeze all possible profits"[23] out of condemned transactions, is probably the most effective safeguard in protecting the public against those abuses and practices which gave birth to the legislation.[24] With its underlying policy and enforcement provisions so clearly articulated by the Congress, unless the section otherwise commands, its literal words, if in fact they produce an unreasonable result "plainly at variance with the policy of the legislation as a whole,"[25] must yield to the essential policy of the Act.

---

13. See Stella v. Graham-Paige Motors Corp., 232 F.2d 299, 302 (2d Cir.), cert. denied, 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed. 2d 52 (1956) (dictum); Gratz v. Claughton, 187 F.2d 46, 51 (2d Cir.), cert. denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951) (dictum); Smolowe v. Delendo Corp., 136 F.2d 231, 238–39, 148 A.L.R. 300 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943) (dictum).

14. Park & Tilford, Inc. v. Schulte, 160 F.2d 984, 987 (2d Cir.), cert. denied, 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347 (1947).

15. Blau v. Hodgkinson, 100 F.Supp. 361, 373 (S.D.N.Y.1951).

16. Truncale v. Blumberg, 80 F.Supp. 387, 392 (S.D.N.Y.1948) (dictum).

17. Smolowe v. Delendo Corp., 136 F.2d 231, 239, 148 A.L.R. 300 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).

18. Colby v. Klune, 178 F.2d 872, 873 (2d Cir. 1949).

19. Blau v. Allen, 163 F.Supp. 702, 704 (S.D.N.Y.1958).

20. See Smolowe v. Delendo Corp., 136 F.2d 231, 241, 148 A.L.R. 300 (2d Cir.),

cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943); Henss v. Schneider, 132 F.Supp. 60, 63 (S.D.N.Y.1955); Arbetman v. Playford, 83 F.Supp. 335 (S.D. N.Y.1949).

21. Dottenheim v. Murchison, 227 F.2d 737, 738–739 (5th Cir.), cert. denied, 351 U.S. 919, 76 S.Ct. 712, 100 L.Ed. 1451 (1956). See generally, 2 Loss, Securities Regulation 1046 n. 41 (2d ed. 1961).

22. Magida v. Continental Can Co., 231 F.2d 843, 846 (2d Cir.), cert. denied, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956). Accord, Pellegrino v. Nesbit, 203 F.2d 463, 466, 37 A.L.R.2d 1296 (9th Cir. 1953).

23. Smolowe v. Delendo Corp., 136 F.2d 231, 239 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).

24. Cf. B. T. Babbitt, Inc. v. Lachner, 332 F.2d 255, 257 (2d Cir. 1964).

25. Cf. United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940); Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199 (1922); J. C. Penney Co. v. Commissioner of Internal Revenue, 312 F.2d 65, 68 (2d Cir. 1962).

Perforce the defendant urges that the language of 16(b) authorizing suits for the recovery of profits "by the issuer, or by the owner of any security of the issuer" is so clear and unambiguous that, granting the acknowledged policy of liberal interpretation of the section and its enforcement means, nonetheless a construction thereof to include a survivor or successor of an issuer (or its security holder) is foreclosed. The defendant stresses that the Act does not compel, but only authorizes, suit by an issuer or its security owners to recover short-swing profits and that nowhere did Congress expressly confer such right of action upon successor corporations. Accordingly, he urges that to deny successor corporations and their security owners the right to maintain a section 16(b) suit would not devitalize that enforcement provision of the Act. He further contends that the legislative policy would not be frustrated, since a merger would merely limit the time within which a 16(b) suit could be brought.

A collateral contention is that all rights to sue under section 16(b) terminated upon the failure of Van Winkle and those who were its security holders up to the time of dissolution to commence suit prior thereto, upon the theory that by such failure they acquiesced in the conduct of the insider. Notwithstanding, the defendant assumes arguendo that M & T could sue, but, if at all, only in its capacity as assignee of Van Winkle's choses in action, which include any section 16(b) right of recovery. But he argues further that since M & T possessed the 16(b) right of action only as an assignee and not as an issuer, plaintiff's standing as a stockholder of American is necessarily derivative—in fact, double derivative—requiring compliance with Rule 23(b).[26]

The court finds none of these arguments persuasive. There is no support for the defendant's position that Congress intended that suits for the recovery of short-swing profits be restricted to the initial issuer whose securities were the subject of the illicit gains and its security holders, thus leaving no remedy in those instances where, as here, the issuer by a transfer of all its assets to another corporation has become extinct and is without its original security holders. It is true, as defendant states, that the section makes no reference to survivor or successor corporations of an issuer—but neither does it contain any bar against the maintenance of 16(b) suits by such corporations or their security owners. To deny them the right to maintain suit would serve to defeat the purpose of the law; to accord them the right serves to further it. The defendant's position, if accepted, would substantially cut down the availability of section 16(b) as a remedy to security holders. Thus, under the defendant's concept, the right of security holders of an issuer to institute suit under section 16(b) would be terminated whenever the issuer was merged with or succeeded by another corporation; the very act of dissolution of the issuer and the failure to bring suit by the date thereof would end the right of security holders to pursue the insider and have him disgorge his

26. Western Auto Supply Co. v. Gamble-Skogmo, Inc., 348 F.2d 736 (8th Cir. 1965), to which the parties refer, while not presenting the precise issue of the instant case, is an interesting analogy. There the issuing corporation merged with another company and the surviving corporation transferred all the assets it acquired to a third corporation, and both the surviving corporation and the assignee joined in a suit to recover short-swing profits under section 16(b). The question presented was whether the choses in action survived their assignment so as to give the plaintiffs capacity to sue.

The court, recognizing that section 16(b) "must be broadly construed," id. at 739, rejected the defendant's position that the statute's failure specifically to "create a right of action for heirs, successors or assigns," indicated a "legislative intent to exclude their capacity to sue." Id. at 740. It did not reach the broader issue presented here as to the right of security holders of the surviving corporation or its parent and its parent's security holders to maintain a section 16(b) claim without compliance with Rule 23(b).

profits. This hardly conforms to the essential legislative policy of section 16 (b).

The defendant somewhat grudgingly concedes that his position, if upheld, would, as the SEC points out, enable unscrupulous insiders to arrange a merger or its equivalent to thwart the recovery of short-swing profits under section 16(b). But he replies that courts always have the power "to look beyond the form of a transaction conceived in fraud" of the rights and remedies of the corporation or its security holders or of the explicit policy of Congress. This kind of probing, however, is exactly what the Act sought to avoid, and indeed the courts rigidly have resisted efforts to apply subjective standards involving considerations of intent, lack of motive, or improper conduct in 16(b) suits.[27]

But entirely apart from the opportunity to unscrupulous insiders to evade the statute, to construe it as urged by the defendant—that a merger ends the right of security holders to bring suit to recover short-swing profits except upon a compliance with Rule 23(b), a compliance unattainable under his theory— would create anomalies uncalled for by either the statute's language or its legislative history. Clearly there is no basis to deny the right of recovery under section 16(b) to the shareholders of Van Winkle at the time of the short-swing transactions or even to those who acquired their shares subsequently, but before Van Winkle's dissolution, and who by reason of the merger became American shareholders. This right, federally granted, was not terminated by the mere act of Van Winkle's dissolution upon the merger.[28] So, too, neither logic nor policy considerations justify permitting one who purchased shares in an issuer subsequent to an insider's illicit transaction to sue to recover the profits without compliance with Rule 23(b) while prohibiting one who similarly purchased shares, but only of a surviving corporation, from doing the same. The suggestion that to sanction suits in the latter situation would serve to encourage stock purchases solely for the purpose of instituting 16 (b) litigation also exists in the former, where the courts, however, have not been concerned with a stockholder's motive but have permitted him to assert the corporate right to further the effective enforcement of section 16(b).[29]

In sum, the essential argument which the defendant advances is one of language. But language alone can never be dispositive of a statute's meaning.[30]

27. The salutary feature of the remedy is that liability is visited upon the recreant insider "based upon an objective measure of proof." Smolowe v. Delendo Corp., 136 F.2d 231, 235, 148 A.L.R. 300 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). Accord, Falco v. Donner Foundation, Inc., 208 F.2d 600, 604, 40 A.L.R.2d 1340 (2d Cir. 1953); Pellegrino v. Nesbit, 203 F.2d 463, 468 (9th Cir. 1953).

28. See, e.g., N. Y. Business Corporation Law, McKinney's Consol.Laws, c. 4, § 906 (b); United States v. Cigarette Merchandisers Ass'n, 136 F.Supp. 214 (S.D.N.Y. 1955). Although federal law ultimately controls in the interpretation of § 16(b), "[s]tate law may be utilized so far as it is of aid in the development of correct principles or their application in a particular case." John Wiley & Sons v. Livingston, 376 U.S. 543, 548, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964).

29. See Magida v. Continental Can Co., 176 F.Supp. 781 (S.D.N.Y.), aff'd, 231 F.2d

843 (2d Cir.), cert. denied, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956); 2 Loss, Securities Regulation 1042 (2d ed. 1961). Cf. Smolowe v. Delendo Corp., 136 F.2d 231, 241, 148 A.L.R. 300 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943) (dictum).

30. See Massachusetts Bonding & Ins. Co. v. United States, 352 U.S. 128, 138, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956) (dissenting opinion); J. C. Penney Co. v. Commissioner of Internal Revenue, 312 F.2d 65, 68 (2d Cir. 1962); Smither & Co. v. Coles, 100 U.S.App.D.C. 68, 242 F.2d 220, 222, cert. denied, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1129 (1957). Cf. United States v. Lennox Metal Mfg. Co., 225 F.2d 302, 310-313 (2d Cir. 1955); Benton Announcements, Inc. v. Federal Trade Comm'n, 130 F.2d 254, 255 (2d Cir. 1942). See generally, Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527 (1947).

Section 16(b) must be read in its context—against the background of its purpose, of the evils which it was enacted to rectify, and of the subsequent construction which the courts have given it. When so read, the defendant's construction is without substance.

The motion to dismiss is denied.