**Leo P. PORTNOY, Plaintiff-Appellant,**

v.

**KAWECKI BERYLCO INDUSTRIES, INC., et al., Defendants-Appellees.**

No. 79–1240.

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1979.

Decided Oct. 1, 1979.

Rehearing and Rehearing In Banc Denied Nov. 14, 1979.

Jerrold M. Shapiro, Chicago, Ill., for plaintiff-appellant.

Kimball R. Anderson, Winston & Strawn, Donald B. Hilliker, Isham, Lincoln & Beale, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and PELL, Circuit Judges.

PELL, Circuit Judge.

The sole issue in this appeal is whether the plaintiff, a shareholder of both Cabot Corporation (Cabot) and Kawecki Berylco Industries, Inc. (KBI), has standing to bring an action under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), for recovery of profits allegedly obtained by International Mining Corporation (IMC) from short-swing trading of shares of KBI.[1] The structure and relationship of the corporations involved and the changes in that structure and relationship are critical to the outcome.

At the time the plaintiff filed his complaint on May 26, 1978, he was a shareholder of KBI and of Cabot.[2] Cabot was the parent of Cabot Special Metals Corporation (CSMC), which in turn owned Tuckerton Corporation (Tuckerton). Five days later, on May 31, 1978, Tuckerton merged into KBI. The plaintiff and other premerger shareholders of KBI received cash in exchange for their shares of KBI common stock, and CSMC became KBI's sole shareholder. Thus, KBI became a wholly owned subsidiary of CSMC which was a wholly owned subsidiary of Cabot. After the merger, the plaintiff amended his complaint to state that it was brought on behalf of Cabot in addition to KBI. As a result, the standing issue is really a bifurcated one. First, we must determine whether the plaintiff lost his standing when, because of the merger, he lost his status as a shareholder of KBI, and second, we must determine whether his status as a shareholder of Cabot confers standing.

## I

Section 16(b) provides in part: "Suit to recover [short-swing] profit may be institut-

---

1. We offer no opinion as to the merits of whether IMC did engage in illegal short-swing trading.

2. His complaint, however, was brought on behalf of only KBI.

ed at law or in equity . . . by the owner of any security of the issuer in the name and in behalf of the issuer . . ." When the plaintiff filed his § 16(b) action, he was an owner of a security of the issuer (KBI). However, he lost that status five days later, and consequently, we are of the opinion that he lost the standing that he had as an owner of KBI stock. Only one case appears to be directly on point. In *Rothenberg v. United Brands Company*, [1977–78 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,045 at 91,690, *aff'd*, 573 F.2d 1295 (2d Cir. 1977), the court held that the plaintiff lacked standing in his § 16(b) action because he lost his shareholder interest in the issuer as a result of a merger of the issuer and another corporation which occurred after he filed his complaint but during the pendency of the action.

 This result is consistent with cases decided under Rule 23.1, Fed.R.Civ.P.,[3] which governs "derivative action[s] brought by one or more shareholders or members to enforce a right of a corporation." It requires that the plaintiff fairly and adequately represent the interests of other shareholders similarly situated. Accordingly, a plaintiff in a derivative action must maintain his shareholder status throughout the pendency of the lawsuit, and an action will abate if the plaintiff loses his shareholder status before the litigation ends. *Schilling v. Belcher*, 582 F.2d 995 (5th Cir. 1978); *Tryforos v. Icarian Development Company*, 518 F.2d 1258 (7th Cir. 1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976). The underlying rationale of these cases is that because a shareholder will receive at least an indirect bene-

fit (in terms of increased shareholder equity) from any corporate recovery, he has an adequate interest in vigorously litigating the claim. A non-shareholder or one who loses his shareholder interest during the course of the litigation may lose any incentive to pursue the litigation adequately. The same is true in the present case. Therefore, when the plaintiff lost his shareholder interest in KBI, he lost his standing to sue on behalf of KBI under § 16(b).[4]

## II

We now consider whether the plaintiff's status as a shareholder of Cabot gives him standing in this action. Section 16(b) provides that suit may be brought by "the owner of any security of the *issuer* in the name and in behalf of the *issuer*." [Emphasis added.] To determine the scope of the term "issuer" we need not look beyond the Securities Exchange Act of 1934 which defines "issuer" as follows:

The term "issuer" means any person who issues or proposes to issue any security; except that with respect to certificates of deposit for securities, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; and except that with respect to equip-

---

3. We do not suggest that cases decided under Rule 23.1 are directly applicable to a § 16(b) action. But § 16(b) cases such as the present one are structurally derivative in nature and thus the Rule 23.1 cases provide at least some support for the continuous ownership requirement. *See Rothenberg* at 91,692.

 We also note, as did the court in *Rothenberg, id.*, that our decision in no way affects the well established principle that a § 16(b) plaintiff need not satisfy the Rule 23.1 requirement that he be a shareholder of the corporation at the time of the transactions complained of.

4. We raised at oral argument the possibility that the language of § 16(b) (that suit may be "instituted" by a shareholder of the issuer) could be read to mean that the plaintiff only be a shareholder at the time he filed the action. Counsel for the plaintiff, however, conceded at oral argument that he did not rely on such an interpretation for standing as a KBI shareholder. One member of our panel asked, "Do you concede that he [plaintiff] had no further standing [after the merger] insofar as [his ownership of] KBI stock is concerned?" Counsel responded, "Absolutely. I don't dispute that at all."

ment-trust certificates or like securities, the term "issuer" means the person by whom the equipment or property is, or is to be, used.

15 U.S.C. § 78c(a)(8).[5] The statutory language is thus specific that the issuer is the person who issues the security which is involved in the short-swing trading, in this case, KBI.

■ The plaintiff asks us to broaden the definition to encompass Cabot which would make the issuer include the parent of the parent of the issuer. Although the plaintiff's contention is not absurd on policy grounds,[6] we cannot rewrite the statute to accommodate this situation. Congress has spoken clearly. When it wanted a broader definition of issuer, it drafted one. In § 2(a)(11) of the Securities Act of 1933, for example, "issuer" is defined as including "any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer." 15 U.S.C. § 77b(11). In § 16(b), on the other hand, Congress apparently intended only those with a less tenuous financial interest to have standing and confined standing other than to the "issuer" itself to "the owner of any security of the issuer."

In a similar vein, courts have refused to construe the phrase "officer of the issuer" in § 16(b) to include an officer of the subsidiary of the issuer or an officer of the division of the issuer. In *Lee National Corporation v. Segur*, 281 F.Supp. 851, 852 (E.D.Pa.1968), the court stated:

> While the purpose of the Act is to recover "short swing profits" realized by so-called "insiders", the fact is that if it be the congressional intent to include officers of subsidiary corporations as well as officers

of the "issuer" corporation, this can be quickly accomplished by a simple amendment to the Act. It need not be accomplished by what may be considered "judicial legislation".

*Accord Gold v. Sloan*, 486 F.2d 340 (4th Cir. 1973), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1976). We similarly reject the plaintiff's invitation to draft "judicial legislation" to grant him standing.

The plaintiff places heavy reliance on *Blau v. Oppenheim*, 250 F.Supp. 881 (S.D.N.Y.1966), for his theory that ownership of stock in Cabot gives him standing to sue. In *Blau*, the plaintiff brought a § 16(b) action for recovery of short-swing profits. One year after the short-swing trading, the issuer sold and transferred all its assets and choses in action to M & T Chemicals, Inc., a wholly owned subsidiary of American Can Co. The issuer was merged into M & T and ceased to exist. The plaintiff, as a shareholder of American Can, filed the § 16(b) suit for recovery of the short-swing profits obtained by Oppenheim in trading of the issuer's stock. The court held that the plaintiff could maintain the action on the basis of his shareholder status in American Can whose wholly owned subsidiary had absorbed the issuer.

*Blau* is factually distinguishable in that the issuer no longer existed, whereas in the present case KBI still exists as a viable corporate entity. This distinction justifies the different result in *Blau*, because if the statutory language were applied to allow only shareholders of the issuer to enforce the violation, and the issuer were dissolved, the statutory language would require the absurd result that no party would exist who had standing to enforce the violation.[7] In

---

**5.** This definition of issuer. applies to § 16(b) actions. *American Standard, Inc. v. Crane Co.*, 510 F.2d 1043 (2d Cir. 1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975).

**6.** The argument could be made that a shareholder of the grandparent corporation has some interest in seeing that the grandchild corporation recovers short-swing profits because the recovery could affect the equity value of the grandparent stock. The connection, however, is so tenuous that, except in a most un-

usual situation, the equity value of the grandparent would be unaffected.

**7.** Principles of statutory construction allow courts to construe a statute with greater flexibility if the most obvious construction would lead to an absurd result.

> Unquestionably the courts, in interpreting a statute, have some "scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that

the present case, since KBI still exists, its shareholder, CSMC, had the right to bring the action regardless of whether it chose to exercise that right.[8] CSMC apparently is not likely to bring an action since, among other things, it was on the purchasing end of the short-swing trading. This, however, does not provide a compelling reason to contort the statutory language to confer standing on another party. It would be a dangerous precedent to confer standing on a plaintiff who falls outside the class of parties permitted by the language of the statute to bring suit merely because the only parties that fall within the class choose not to exercise their right to sue.

In conclusion, although we consider the result in this case to have the appearance of being a harsh one in that a possible violation will apparently go uncorrected, we note on the more positive side that the plaintiff has not argued that the merger which cut off his standing as a KBI shareholder was accomplished for the fraudulent purpose of avoiding enforcement of the § 16(b) claim. For the reasons hereinbefore stated, we hold that the plaintiff lacks standing to maintain this action. The judgment of the district court, which granted summary judgment for the defendants because of the plaintiff's lack of standing, is therefore

AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

The question is whether Leo P. Portnoy, a Cabot Corporation stockholder, has standing to sue on its behalf for the recovery of short-swing profits under section 16(b) of the Securities Exchange Act of 1934. Actually, the more precise question is whether Cabot may currently be considered the issuer of Kawecki Berylco Industries common stock. The following diagram may help to understand the complicated nature of this case, involving a number of corporate entities.

\* Tuckerton Corp. (newly-formed, wholly-owned subsidiary of CSMC) was created for purposes of the merger with KBI.

\*\* The notice to KBI stockholders regarding the planned merger contained the following paragraph

 1. To consider and vote upon a proposal to approve and adopt an Agreement of Merger and Plan of Merger pursuant to which Tuckerton Corporation, a newly-formed, wholly-owned subsidiary of Cabot Special Metals Corporation (a wholly-owned subsidiary of Cabot Corporation) will be merged with and into the Company and the outstanding Common Stock of the Company (other than shares owned by Cabot Special Metals Corporation) will be converted into the right to receive $29.00 a share in cash (the "Merger").

\*\*\* From September 29, 1977 through January 26, 1978, IMC through its 64.4% ownership of PATO, purchased 18,600 shares of KBI stock for $325,405.00. On April 3, 1978 PATO sold the 18,600 shares of KBI stock, realizing a short-swing profit of approximately $214,000.00. (IMC through its direct ownership of KBI stock and its 64.4% ownership of PATO was a greater-than ten percent beneficial owner of KBI stock.)

On May 21, 1978 KBI was merged with Tuckerton Corporation, the wholly-owned subsidiary of CSMC which, in turn, was the wholly-owned subsidiary of Cabot.[1] Although plaintiff lost his status as a stock-

---

meaning would lead to absurd results . . . .

*Commissioner v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965).

8. Because of the important distinction just discussed, *Blau* is inapposite to the present case. This is not to say, however, that we condone the reasoning or the result in *Blau*. Although we need not and thus do not now decide the issue, it appears that *Blau* went too far in granting standing to the plaintiff. That the issuer dissolved in its merger into M & T does not appear to justify standing for a shareholder of M & T's parent, American Can. It would

seem that limiting standing to a shareholder of M & T would be a sounder result.

1. Defendant Cabot Corporation in its motion for summary judgment averred: "As of the end of May, 1978, 100% of the interest of KBI was acquired by Cabot Corporation and KBI was merged into Tuckerton Corporation, a wholly-owned subsidiary of Cabot. KBI now no longer exists as a corporate entity." KBI's and IMC's motions for summary judgment contained identical averments. Interestingly, the brief of defendant-appellee IMC, in its attempt to distinguish *Blau v. Oppenheim*, 250 F.Supp. 881 (S.D.N.Y.1966), asserted: "In the present

holder of KBI as the result of the merger, he was and remains a shareholder of Cabot. As such, does he have standing to bring this action?[2]

Plaintiff's standing hinges on whether Cabot Corporation may for purposes of section 16(b) be considered the "issuer" of KBI's common stock. KBI as a separate legal entity (or at least as an independent business entity, see supra, n. 1) ceased to exist after the merger. Cabot through CSMC and Tuckerton became its successor-in-interest. Although Cabot was not the issuer of the KBI stock when it was issued and therefore does not fit the literal term of the statute, it succeeded to that status upon completion of the merger.

This was the same conclusion Judge Weinfeld came to in *Blau v. Oppenheim*, 250 F.Supp. 881 (S.D.N.Y.1966). Although the facts there were somewhat different from those here, the cases are analogous and, in my view, legally indistinguishable. (In *Blau* the insurer's corporation, Van Winkle, sold its assets to M & T Chemicals, a wholly-owned subsidiary of American Can Company and M & T assumed Van Winkle's liabilities. For consideration, American delivered a specified number of its share to Van Winkle which then distributed these shares to its stockholders. Van Winkle then merged into M & T and went out of existence upon being dissolved. The plaintiff was a subsequent purchaser of American stock. The defendant charged with violating section 16(b) was an officer and director of Van Winkle.) Judge Weinfeld held that section 16(b) "is broad enough to embrace an issuer's successor in interest or a surviving corporation to which has been transferred all its assets, properties and choses in action." He then went on to say:

There is no support for the defendant's position that Congress intended that suits for the recovery of short-swing profits be restricted to the initial issuer whose securities were the subject of the illicit gains and its security holders, thus leaving no remedy in those instances where, as here, the issuer by a transfer of all its assets to another corporation has become extinct and is without its original security holders. It is true, as defendant states, that the section makes no reference to survivor or successor corporations of an issuer—but neither does it contain any bar against the maintenance of 16(b) suits by such corporations or their security owners. To deny them the right to maintain suit would serve to defeat the purpose of the law; to accord them the right serves to further it.

\* \* \* \* \* \*

case, KBI, the issuing corporation still exists as a viable corporate entity." IMC brief at 14. See also KBI/Cabot Corporation brief at 3 ("On May 31, 1978, Tuckerton merged into KBI. The surviving corporation, KBI, became a wholly-owned subsidiary of CSMC, which remained wholly-owned by Cabot.") The defendants' positions on this factual question have evidenced remarkable adaptability.

2. The May 12, 1978 KBI proxy statement contained the following paragraph:

The Company has been advised by its counsel, Messrs. Donovan Leisure Newton & Irvine, that questions reasonably exist as to whether there could be any recovery of profits realized by one or more of the Sellers, and as to the amount of any recovery which might be obtained. The value of such right, if any, as the Company may have to such recovery is not reflected in the financial information included elsewhere in this Proxy Statement. Neither the Company nor Cabot has any present intention of asserting any possible claim it may have under Section 16(b) arising out of the transactions described above. If the Merger is consummated, Cabot will be the Company's only shareholder and its other present shareholders will have no interest in any recovery of profits realized on account of the transactions described above. If, on the other hand, the Merger is not consummated, the Company will give further consideration to taking legal action in this connection. If any shareholder commences suit on behalf of the Company to assert any possible claim under Section 16(b), he may, upon the effectiveness of the Merger, lose his standing to continue to maintain such suit. However, in determining the value of the shares of dissenting shareholders, a *pro rata* portion of any possible Section 16(b) claim may be taken into account. See "Appraisal Rights of Dissenting Shareholders".

In sum, the essential argument which the defendant advances is one of language. But language alone can never be dispositive of a statute's meaning. Section 16(b) must be read in its context—against the background of its purpose, of the evils which it was enacted to rectify, and of the subsequent construction which the courts have given it.

250 F.Supp. at 886–88. Judge Weinfeld's discussion and holding are equally applicable to the case at bar.

Citing section 2(11) of the Securities Act of 1933 as an example, the majority says: "Although the plaintiff's contention is not absurd on policy grounds, we cannot rewrite the statute to accommodate this situation. Congress has spoken clearly. When it wanted a broader definition of issuer, it drafted one." But we need not rewrite the statute. Common sense tells us that by construction Cabot has become the issuer of the KBI stock within the definition of the statute. Put another way, KBI's identity for purposes of section 16(b) has been retained in Cabot. We should not expect Congress to divine—and provide for—all the possible corporate restructuring that, whether intentionally or not, can defeat the salutary purposes of the statute. The task of accommodating a statute to a given set of facts is for the courts. By such accommodation the purposes of section 16(b) can be satisfied and the laments of the majority for not being able to reach the result it seemingly longs for could be avoided.