**Harry LEWIS, Plaintiff-Appellant,**

**v.**

**William H. McADAM, Sears, Roebuck and Co., and Sears Development Corporation, Defendants-Appellees.**

**No. 84–5652.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1985.

Decided June 6, 1985.

Jack Corinblit, Corinblit, Shapero & Seltzer, Los Angeles, Cal., for plaintiff-appellant.

John W. Stamper, O'Melveny & Myers, Los Angeles, Cal., for defendants-appellees.

## OPINION

Appeal from the United States District Court for the Central District of California.

---

\* Honorable Gus J. Solomon, Senior U.S. District Judge for the District of Oregon, sitting by desig-

Before KENNEDY and ALARCON, Circuit Judges, and SOLOMON,\* District Judge.

PER CURIAM:

The appeal before us raises two questions we have not previously addressed: first, whether an issuer corporation's cause of action against one of its directors survives after the corporation is extinguished by merger; and second, whether an individual who did not own stock in the issuer or in the surviving corporation, but who is a shareholder of the parent of the surviving corporation, has standing to initiate an action under section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (1982). We answer the first question in the affirmative, and the second in the negative, and affirm the district court.

Pursuant to a merger agreement effective on September 15, 1981, Coldwell Banker and Company acquired the First Newport Corporation by absorbing First Newport's assets and liabilities and exchanging Coldwell Banker stock for First Newport stock. William McAdam, a member of the Board of Directors of Coldwell Banker, owned 3,300 shares of First Newport stock prior to the merger and surrendered them in return for 3,300 shares of Coldwell Banker stock.

In October 1981, Sears, Roebuck and Company and Coldwell Banker agreed that Sears would acquire Coldwell Banker through Sears' wholly owned subsidiary, Sears Development Corporation (SDC). SDC purchased approximately 40 percent of the outstanding Coldwell Banker stock and made a tender offer to Coldwell Banker shareholders, giving them the option to exchange their stock for cash, shares of Sears, or a combination of the two. In November 1981, McAdam, who owned 43,560 Coldwell Banker shares, tendered 30,130 shares for cash and exchanged 13,430 shares for an equivalent amount of Sears

nation.

stock. It is uncontested that McAdam realized a profit of $62,287 on the 3,300 shares of Coldwell Banker stock acquired in the merger between First Newport and Coldwell Banker. Coldwell Banker's merger into SDC became effective December 31, 1981, when Coldwell Banker ceased to exist as a separate corporate entity.

Harry Lewis is a public shareholder of Sears. At no time, however, did he own stock in either Coldwell Banker or SDC. In February 1982, counsel for Lewis wrote to Sears demanding that it institute a section 16(b) action to recover the profits made by McAdam as a result of his short-swing trading of 3,300 shares of Coldwell Banker stock within a six-month period. The Sears Board of Directors rejected the demand on the ground that it would be unseemly and contrary to Sears' best interests to seek recovery of an amount SDC had voluntarily offered to pay in connection with an acquisition initiated by Sears. Lewis then filed suit against McAdam, Sears, and SDC, alleging that McAdam had made use of material inside information in the acquisition and sale of securities in less than six months, realizing a short-swing profit of $62,287 in violation of section 16(b).

Appellees McAdam, Sears, and SDC moved for summary judgment. They contended first that Lewis lacked standing under section 16(b), arguing that the statute expressly limits standing to the original issuer of the stock in question and to the security holders of the issuer, and pointing out that Lewis was not a security holder of Coldwell Banker. Second, they argued that the conversion of stock pursuant to the terms of a merger agreement did not constitute a "purchase and sale" within the meaning of section 16(b), and that McAdam had therefore not engaged in unlawful short-swing trading.

The district court held that Lewis lacked standing to institute a section 16(b) action, and granted summary judgment for appellees without reaching the merits of Lewis' claim or the defenses thereto. In reviewing an order of summary judgment, our task is identical to that of the trial court,

and we view the evidence in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the moving parties are entitled to judgment as a matter of law. *Veit v. Heckler*, 746 F.2d 508, 510 (9th Cir.1984); *Fine v. Barry and Enright Productions*, 731 F.2d 1394, 1396 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984).

> Section 16(b) provides in pertinent part:
> For the purpose of preventing the unfair use of information which may have been obtained by ... [an insider] by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months, ... shall inure to and be recoverable by the issuer.... Suit to recover such profit may be instituted at law or in equity *by the issuer, or by the owner of any security of the issuer* in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.

15 U.S.C. § 78p(b) (emphasis added). Lewis contends he has standing to bring a section 16(b) action against McAdam notwithstanding the express language of section 16(b) limiting the right to sue to the issuer (here, Coldwell Banker) or to the owner of a security in the issuer. "Issuer" is defined in the statute as "any person who issues or proposes to issue any security." 15 U.S.C. § 78c(8).

We must first ascertain whether the right to initiate a section 16(b) action against the director of a corporation survives if the corporation is extinguished by merger. As the federal statute does not address the question, we must look to the common law and the law of the state under which the surviving corporation was incorporated to determine whether the nature of the cause of action in question is one that

has traditionally survived merger. *Western Auto Supply Co. v. Gamble-Skogmo, Inc.*, 348 F.2d 736, 740–41 (8th Cir.1965), *cert. denied*, 382 U.S. 987, 86 S.Ct. 556, 15 L.Ed.2d 475 (1966).

▮ A cause of action ·under section 16(b) arises from breach of an insider's statutory duty and is designed to safeguard property rights. At common law, following a merger, a chose in action to enforce a property right vests in the surviving corporation and no right of action remains in the extinct corporation. *Western Auto Supply Co.*, 348 F.2d at 741. This common law rule is codified in New York law, applicable here since SDC, the surviving corporation, was incorporated under the laws of New York. Under New York law, upon the filing of a certificate of merger "[a]ll the property, real and personal, including subscriptions to shares, causes of action and every other asset of each of the constituent corporations, shall vest in such surviving ... corporation without further act or deed." N.Y.Bus.Corp.Law § 906(b)(2). Thus, on the facts before us, we hold that SDC, as the surviving corporation, was vested with the rights to initiate a section 16(b) action against a director of Coldwell Banker as a matter of law.

The next question becomes whether Lewis, who holds stock only in Sears, has standing to initiate a section 16(b) action against a director of Coldwell Banker. In more general terms, the question is whether, where an original issuer is extinguished by merger, and the corporation succeeding to the issuer's cause of action is a wholly owned subsidiary, a shareholder of the parent may be deemed an "owner of a security in the issuer" for purposes of bringing a section 16(b) action, when the merger transaction was structured and financed by the parent. Lewis argues that the express language of section 16(b) should be construed broadly in this type of situation to preserve the statutory enforcement scheme. The expansive interpretation is necessary, he argues, as public stockholders are those most likely to sue to vindicate the congressional policy against insider

trading. *See Pellegrino v. Nesbit*, 203 F.2d 463, 467 (9th Cir.1953) (corporations will generally be reluctant to bring section 16(b) actions against their own directors). Lewis asserts that, as Sears has already determined not to act, there will be virtually no way to correct McAdam's alleged abuse of his fiduciary position as a director of Coldwell Banker unless Sears' shareholders are deemed to have standing for this purpose.

Lewis relies extensively on *Blau v. Oppenheim*, 250 F.Supp. 881 (S.D.N.Y.1966), for the proposition that, as a Sears shareholder, he has standing to initiate a section 16(b) action. The court in *Blau* held that a shareholder of a parent corporation may bring an action under section 16(b) against the director of a company that has merged into a wholly owned subsidiary of the parent corporation. In so holding, the court "acknowledged at once that upon a strict or literal reading of section 16(b) plaintiff never was 'the owner of any security of the issuer ...,'" *id.* at 884, but reasoned that while

> section [16(b)] makes no reference to survivor or successor corporations of an issuer ... neither does it contain any bar against the maintenance of 16(b) suits by such corporations or their security owners. To deny them the right to maintain suit would serve to defeat the purpose of the law; to accord them the right serves to further it.

*Id.* at 886.

The expansive construction of the statute set forth in *Blau*, however, has not been followed. Even the Second Circuit, in decisions subsequent to *Blau*, appears to have conferred standing under section 16(b) only on shareholders of the surviving corporation, relying on the theory that the surviving corporation inherits the cause of action from the original issuer and therefore has standing as a matter of law. *See American Standard, Inc. v. Crane Co.*, 510 F.2d 1043, 1062 (2d Cir.1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975); *Newmark v. RKO General, Inc.*, 425 F.2d 348, 352 n. 2 (2d Cir.), *cert. de-*

*nied,* 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (1970). We decline to follow the *Blau* analysis here to confer standing upon Lewis. *Accord Portnoy v. Kawecki Beryclo Industries,* 607 F.2d 765, 768–69 (7th Cir. 1979).

■ Thus, even assuming *arguendo* that Sears has standing to sue as a shareholder of SDC, our construction of section 16(b) does not avail Lewis. The starting point for interpreting any statute is the plain meaning of the language used by Congress. Absent a clearly established legislative intent to the contrary, that language, if clear and unambiguous, will ordinarily be regarded as conclusive, since it is generally assumed that Congress expresses its purpose through the ordinary meaning of the words it uses. *Escondido Mutual Water Co. v. La Jolla,* —— U.S. ——, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984); *North Dakota v. United States,* 460 U.S. 300, 103 S.Ct. 1095, 1102–03, 75 L.Ed.2d 77 (1983); *Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Church of Scientology v. United States Dep't of Justice,* 612 F.2d 417, 421 (9th Cir.1979). We have no constitutional authority to rewrite a statute simply because we may determine that it is susceptible of improvement. *Badaracco v. Commissioner,* 464 U.S. 386, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984).

Section 16(b) permits a security holder of the issuer to bring a section 16(b) action only after the issuer has failed either to institute an action or to prosecute diligently after instituting an action. We find nothing in the legislative history of section 16(b) indicating that the plain meaning of the statutory language is inadequate to effect the congressional purpose of providing an enforcement mechanism against insider trading. That a merger may result in a corporation succeeding to an action formerly held by an individual is a consequence dictated by the statute. We will not confer standing on a plaintiff who falls outside the class of persons permitted by the language of the statute to bring suit merely because the only parties falling within the class choose not to exercise their right to sue. *Portnoy,* 607 F.2d at 769.

Congress is well aware of the corporate practice of parent companies utilizing wholly owned subsidiaries in merger transactions. Had Congress wanted to discourage this practice by conferring standing on shareholders of a parent corporation whose wholly owned subsidiary absorbed the original issuing corporation, it knew how to do so. *Cf. Touche Ross & Co. v. Redington,* 442 U.S. 560, 571–72, 99 S.Ct. 2479, 2486–87, 61 L.Ed.2d 82 (1979) (refusal to interpret section 17(a) as creating a private right of action). Accordingly, we conclude that Congress included in the statutory language of section 16(b) all the remedies it deemed appropriate. *See Middlesex County Sewerage Authority, et al. v. National Sea Clammers Association, et al.,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979) (where a statute provides a particular remedy, we must be chary of reading others into it).

■ We hold that where a corporation is merged out of existence by the wholly owned subsidiary of another corporation, the parent corporation is not an "issuer" within the meaning of section 16(b). Similarly, a shareholder of the parent corporation cannot be considered an "owner of any security of the issuer" and accordingly lacks standing to bring a section 16(b) action. In the case before us, Sears is not a section 16(b) "issuer," and Lewis, who owned stock in neither SDC nor Coldwell Banker, lacks standing under the statute.

AFFIRMED.