**Walter UNTERMEYER, Plaintiff,**

v.

**VALHI, INC., CSX Corporation, and Sea-Land Corporation, Defendants.**

No. 87 Civ. 1754 (MGC).

United States District Court,
S.D. New York.

July 28, 1987.

Kaufman Malchman Kaufmann & Kirby, by Irving Malchman, New York City, for plaintiff.

Townley & Updike, by James K. Leader, New York City, Kirkland & Ellis, by Daniel F. Attridge, John G. Froemming, Washington, D.C., for defendant Valhi, Inc.

## OPINION

CEDARBAUM, District Judge.

Defendant Valhi, Inc. ("Valhi") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The action was commenced under section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), to recover "short swing profits" realized by defendant Valhi from the purchase and sale of common stock of Sea-Land Corporation ("Sea-Land"). The motion rests on plaintiff's lack of standing. There are no contested issues of material fact which would render summary judgment inappropriate. Because I conclude that plaintiff has no standing to sue under section 16(b), Valhi's motion is granted.

## I. *Background*

The verified amended complaint alleges that Valhi, while an owner of more than 10% of Sea-Land's common stock, purchased and sold Sea-Land's common stock at a profit within a period of less than six months. Valhi sold its Sea-Land stock to CSX Corporation ("CSX") for $33.33 per share when the market price of Sea-Land's stock was about $28.00 per share. CSX cooperated with Valhi in attempting to disguise the sale as an option agreement, exercisable by CSX after expiration of the six-month period of section 16(b). CSX agreed to indemnify Valhi against section 16(b) liability, and Valhi agreed not to attempt to take over Sea-Land or CSX for ten years.

CSX acquired additional shares of Sea-Land's stock for $28.00 per share through a cash tender offer. A subsidiary of CSX, CSX Acquisition Corp., was then merged into Sea-Land in a cash-out merger by virtue of which Sea-Land, the surviving corporation in the merger, became a wholly owned subsidiary of CSX. Plaintiff is a shareholder of CSX. CSX owns 100% of Sea-Land's common stock. Plaintiff has never owned Sea-Land stock. There is no suggestion that Valhi either had access to or made unfair use of inside information. Rather, plaintiff's claim is based solely on a violation by Valhi of the mechanical prophylactic standard of section 16(b).

Plaintiff asserts alternative claims under section 16(b) seeking the disgorgement of approximately $68.8 million in short swing profits. The first claim is a "single derivative" action in behalf of CSX. The alternative claim is a "double derivative" action in behalf of Sea-Land. The amended complaint alleges futility of demand based on the agreements between Valhi and CSX. Valhi, CSX and Sea-Land are all named as defendants.

Section 16(b) provides in pertinent part that a suit may be instituted "by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request...." 15 U.S.C. § 78p(b). The stat-

ute defines "issuer" as "any person who issues or proposes to issue any security." 15 U.S.C. § 78c(a)(8).

Valhi contends that plaintiff has no standing to bring a section 16(b) action in behalf of CSX because CSX, as the parent of Sea-Land, is not the "issuer" within the meaning of section 16(b), but rather is itself the owner of securities of the issuer. Valhi relies on precedent favoring a strict construction of section 16(b) and on decisions which have declined to expand standing under that section. With respect to the claim in behalf of Sea-Land, Valhi argues that plaintiff lacks standing because, as a shareholder of the parent of the issuer, plaintiff cannot be considered "an owner of any security of the issuer." The "double derivative" action is merely a relabeling of the same allegations. Valhi also argues that there is no justification for permitting a "double derivative" action since neither CSX nor Sea-Land was controlled by Valhi.

In opposition to Valhi's motion, plaintiff urges a construction of "issuer" that includes CSX because the violation of section 16(b) was followed by a merger in which Sea-Land became a wholly owned subsidiary of CSX. Plaintiff argues that the remedial purpose of section 16(b) requires such a construction because there are no minority shareholders of Sea-Land to enforce the statute. Alternatively, plaintiff argues that the standing issue is obviated because plaintiff may bring a "double derivative" suit in behalf of Sea-Land as a distinct proceeding.

## II. *Discussion*

Plaintiff's characterization of his alternative claims as "single derivative" and "double derivative" begs the question. Section 16(b) explicitly confers standing to sue, in behalf of the issuer, only on the issuer itself or on the owner of any security of the issuer. 15 U.S.C. § 78p(b). Plaintiff's first claim seeks a construction of section 16(b) that treats him as falling within the second of these two categories. He argues that "issuer" includes the parent of the issuer, and thus, as a shareholder of CSX, he is a shareholder of the issuer. In contrast, plaintiff's second claim does not purport to place plaintiff within the statutory category. Rather, he seeks to institute a "double derivative" action under section 16(b) in behalf of Sea-Land, apparently on the theory that CSX and Sea-Land should be treated as a single entity.

No matter how plaintiff's claims are characterized, the issue raised by Valhi's motion is whether a shareholder of a corporation which owns all of the stock of an existing issuer has standing to bring a section 16(b) suit for recovery of short swing profits. This is a question of first impression in this Circuit. Decisions permitting multiple derivative suits in contexts not involving section 16(b), *see Goldstein v. Groesbeck*, 142 F.2d 422 (2d Cir.), *cert. denied*, 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590 (1944); *United States Lines, Inc. v. United States Lines Co.*, 96 F.2d 148, 151 (2d Cir.1938); *Fischer v. CF & I Steel Corp.*, 599 F.Supp. 340 (S.D.N.Y.1984), are not applicable. It does not follow *a fortiori*, as plaintiff argues, that a double derivative suit is permissible under section 16(b). The validity of multiple derivative suits in other contexts does not justify circumvention of section 16(b)'s specific standing requirements.

Section 16(b)'s express statement of purpose is "preventing the unfair use of information which may have been obtained by [a more than 10%] beneficial owner, director, or officer by reason of his relationship to the issuer...." 15 U.S.C. § 78p(b). As a means to this end, the statute provides that "any profit realized by him from any purchase and sale ... of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer...." *Id.* It imposes a strict standard of liability which ordinarily is to be applied with a "mechanical quality." *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 425, 92 S.Ct. 596, 600, 30 L.Ed.2d 575 (1972).

The Second Circuit has liberally interpreted the statute in order to effect its "broadly remedial" purpose. *Adler v. Klawans*, 267 F.2d 840 (2d Cir.1959); *Smolowe v. Delendo Corp.*, 136 F.2d 231, 239 (2d Cir.), *cert. denied*, 320 U.S. 751, 64 S.Ct. 56,

88 L.Ed. 446 (1943). But the statutory language may not be strained or distorted to add to the " 'prophylactic' effect Congress itself clearly prescribed in § 16(b)." *Blau v. Lehman,* 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962). *See also Reliance Electric Co. v. Emerson Electric Co., supra; Lee National Corp. v. Segur,* 281 F.Supp. 851 (E.D.Pa.1968). Holding that an "officer of the issuer" does not include an officer of a subsidiary of the issuer, the *Lee* court concluded:

> While the purpose of the Act is to recover "short swing profits" realized by so-called "insiders," the fact is that if it be the congressional intent to include officers of subsidiary corporations as well as officers of the "issuer" corporation, this can be quickly accomplished by a single amendment to the Act. It need not be accomplished by what may be considered "judicial legislation".

281 F.Supp. at 852.

The language of section 16(b) confers standing on an "issuer" or an "owner of any security of the issuer." 15 U.S.C. § 78p(b). In support of his argument that he has standing to sue, plaintiff relies on *Blau v. Oppenheim,* 250 F.Supp. 881 (S.D. N.Y.1966). In *Oppenheim,* the issuer was merged into the wholly owned subsidiary of a publicly held corporation in a transaction in which shares of the parent were exchanged for shares of the issuer. Thus, all shareholders of the issuer became shareholders of the parent. As a shareholder of the parent corporation, the plaintiff sued under section 16(b) to recover short swing profits from the purchase and sale of the stock of the issuer. The court held that the parent corporation was the successor of the "issuer" and should be treated as the "issuer" for purposes of section 16(b). In ruling that the plaintiff had standing, Judge Weinfeld looked to the remedial purpose of the statute:

> [U]nder the defendant's concept, the right of security holders of an issuer to institute suit under section 16(b) would be terminated whenever the issuer was merged with or succeeded by another corporation; the very act of dissolution of the issuer and the failure to bring suit

by the date thereof would end the right of security holders to pursue the insider and have him disgorge his profits. This hardly conforms to the essential legislative policy of section 16(b).

250 F.Supp. at 886–87.

*Oppenheim* is distinguishable from the case at bar. A key fact in *Oppenheim* was the disappearance of the issuer and the consequent concern that no person or entity would have standing to sue under section 16(b). 250 F.Supp. at 886. *See C.R.A. Realty Corp. v. American Express,* [1984 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 91,528, at 98,657 (S.D.N.Y.1984) [Available on WESTLAW, DCT database]. Here, the issuer, Sea-Land, survives as a corporate entity with CSX as its shareholder. Sea-Land itself could bring a section 16(b) action against Valhi. If Sea-Land chose not to, CSX, as the shareholder of Sea-Land, could bring a section 16(b) action against Valhi. If the agreements between CSX and Valhi improperly deterred CSX from bringing such an action, CSX shareholders are not without a remedy. They could bring a derivative suit against the directors and officers of CSX for breach of fiduciary duty, a point not considered in *Oppenheim.*

A second significant difference is that in *Oppenheim* the parent corporation was in a real sense the successor of the defunct issuer. In the absence of a surviving issuer, the court construed the statutory term "issuer" to include the substantial successor of the issuer. Thus, both the parent, as "issuer," and the shareholder plaintiff, as an "owner of any security of the issuer," had standing to bring the section 16(b) action. A justification for treating the parent as the successor issuer was that in the merger of the issuer into the parent's wholly owned subsidiary, the shareholders of the issuer received shares of the parent in exchange for their shares of the issuer. 250 F.Supp. at 883, 887. Here, however, the transaction took place without a similar exchange of securities; the parent's stock was not exchanged for stock of the issuer. Stock of the issuer was exchanged for cash. Thus, there

would be no reason to consider CSX as the successor issuer of Sea-Land.

In cases not factually in point, the Second Circuit has cited *Oppenheim* as recognizing that the successor corporation of an issuer that no longer exists may be treated as the issuer under section 16(b), and that, therefore, a stockholder of the successor corporation by merger has standing to sue under section 16(b). *See American Standard, Inc. v. Crane Co.*, 510 F.2d 1043, 1057 n. 22 (2d Cir.1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975); *Newmark v. RKO General, Inc.*, 425 F.2d 348, 352 n. 4 (2d Cir.), *cert. denied*, 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (1970). But the Second Circuit has never held that such standing may be extended to a shareholder of the parent corporation of a surviving issuer. The language of section 16(b) does not permit such a result.

Other circuits have refused to expand standing under section 16(b). In *Lewis v. McAdam*, 762 F.2d 800 (9th Cir.1985), the Court held that a shareholder of the parent of a wholly owned subsidiary which had absorbed the issuer did not have section 16(b) standing. Noting that Congress is "well aware of the corporate practice of parent companies utilizing wholly owned subsidiaries in merger transactions," *id.* at 804, the court stated:

> We find nothing in the legislative history of section 16(b) indicating that the plain meaning of the statutory language is inadequate to effect the congressional purpose of providing an enforcement mechanism against insider trading.

*Id.* In *Portnoy v. Kawecki Berylco Industries, Inc.*, 607 F.2d 765 (7th Cir.1979), upon a similar finding of legislative intent, the court refused to extend standing to a shareholder of the parent of the parent of the issuer. *Id.* at 767–69.

### III. *Conclusion*

For the reasons discussed above, plaintiff is not authorized by section 16(b) of the Securities Exchange Act to institute a suit in behalf of CSX or Sea-Land with respect to transactions in the common stock of Sea-Land. Accordingly, defendant Valhi's motion for summary judgment is granted.

Since this action is brought in behalf of Sea-Land and CSX, and those corporations are named as nominal defendants only, summary judgment for Valhi entirely disposes of plaintiff's claims and requires dismissal as to Sea-Land and CSX.

SO ORDERED.