Paul KREINDLER, Plaintiff,

v.

Melville MARX, Sr., Julian Levi, Joseph J. Amaroso, Marshall Bennett, Donald N. Frey, Maurice Lewitt, H. M. Friend, Marvin T. Temperman, William N. Hartauer, Robert L. Heymann and Hyatt Corporation, a Delaware Corporation, Defendants.

No. 79 C 0763.

United States District Court,
N. D. Illinois, E. D.

Dec. 11, 1979.

Stephen J. Spitz, Paul E. Slater, Sperline, Slater & Spitz, Chicago, Ill., for plaintiff.

Donald E. Egan, John J. Mustes, Michael A. Reiter/Katten, Muchin Gitles, Zavis, Pearl & Galler, H. Nicholas Berberian, Steven L. Bashwiner, Friedman & Koven, William J. Harte, Kevin M. Forde, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Paul Kreindler brought this derivative suit[1] on behalf of Hyatt Corporation ("Hyatt") against defendants Hyatt and the individual members of its Board of Directors, including Jay, A. N. and Robert Pritzker ("Pritzker family"), who collectively own 45% of Hyatt stock. The transactions complained of occurred in the mid-to-late 1970's. Plaintiff initially filed a derivative suit in the Southern District of New York on December 28, 1978 (78 Civ. 6241). On January 31, 1979, the defendants therein moved to dismiss on the following grounds: failure to file a verified complaint, improper service of process, lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue.

On or about February 5, 1979, Hyatt merged with a Delaware corporation, New Hy, which had been formed for the purpose of that merger. As a result, all public shareholders, including plaintiff, were automatically and immediately entitled to cash and to shares of stock in a different corporation, Elsinore Corporation. On February 21, 1979, plaintiff's complaint in the New York case was retired voluntarily, the actual entry of dismissal being made on March 7, 1979.

The amended complaint herein was filed on July 27, 1979 (the original complaint had been lodged on February 27, 1979) and alleged that the director defendants breached their fiduciary duty to Hyatt by approving bare-payment leases between the Pritzker family and Hyatt, thereby defrauding Hyatt.[2] The plaintiff requests an accounting on behalf of Hyatt for all profits realized by the Pritzker family from these leases and asks damages for all losses sustained by Hyatt resulting from these transactions.

On July 10, 1979, the Pritzker family defendants moved to dismiss the amended complaint on the grounds that plaintiff lacked standing to maintain the derivative suit because he ceased being a shareholder of Hyatt on February 5, 1979, prior to the date this action was filed. Defendants Levi, Bennett, Frey, and Lewitt filed an identical motion to dismiss on the same day. These four defendants later adopted the briefs filed by the Pritzker family in support of their motion to dismiss. In all, seven of the fourteen defendants ("moving defendants") have filed motions to dismiss predicated on plaintiff's alleged lack of

---

1. Jurisdiction is based on diversity of citizenship, 28 U.S.C. Section 1332 and principles of pendent jurisdiction. Plaintiff is a citizen of the State of New Jersey, defendant Hyatt is a Delaware corporation with its principal place of business in Rosemont, Illinois, and none of the individual defendants are citizens of New Jersey. Venue is proper in this district under 28 U.S.C. Section 1391.

2. Twenty-four hotel properties in which the Pritzker family held equity interests had been leased to and operated by Hyatt pursuant to lease agreements ("Bare Payment Leases"). These leases required that Hyatt (1) pay a minimum annual rate equal to total debt service on all original loans secured by the leased property plus a return on any cash investment made by the Pritzkers, (2) assume all maintenance, repair and insurance costs and tax assessments, (3) make a lease deposit, (4) pay to the Pritzker family a percentage rental in addition to the annual rental based upon food and liquor sales and room and store rentals, and (5) provide under certain circumstances long-term financing. The complaint alleges that the leases were negotiated mainly by members of the Pritzker family, thus they acted simultaneously on behalf of Hyatt and the Pritzkers. Furthermore, since the aggregate rental payments by Hyatt to the Pritzker family pursuant to these leases allegedly exceeded Hyatt's operating profits from such properties, the plaintiff claims that the Pritzkers and the Director Defendants breached their fiduciary duty by failing to loyally and honestly conduct the business of Hyatt and conserve its assets. Amended Complaint, paragraphs 16–17.

**614**

standing. The questions before the Court are (1) whether federal or state law applies to determine the standing of a shareholder in a derivative suit based on diversity jurisdiction; (2) what are the requirements of the applicable law for proper standing; and (3) what is the impact of a forced sale of stock through a merger on plaintiff's shareholder status and standing.

## I. APPLICABLE LAW

### A. Requirement of Ownership at the Time of Suit

■ Rule 23.1, Fed.R.Civ.P. provides in relevant part:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law . . .

This rule has two distinct standing requirements. The first is the contemporaneous ownership requirement; i. e. that plaintiff was a stockholder at the time of the transaction involved in the litigation. The second requirement is that plaintiff also must be a stockholder at the time the suit is filed. Although this requirement is not expressly stated in the Rule, it is implicit in its language. *See Schilling v. Belcher*, 582 F.2d 995 (5th Cir. 1978); 7A Wright and

Miller, Federal Practice and Procedure, Section 1826, at 325; 3B Moore's Federal Practice, Paragraph 23.1.17, at 23.1–63 (2d ed. 1978).[3]

All the parties contend that since the question of standing in a diversity suit is a matter of substantive law, state law should control. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since no federal question is involved, the argument is that the status of a stockholder and his standing to maintain a derivative suit under 23.1, Fed.R.Civ.P. is a substantive question to be determined by reference to state law.

The Seventh Circuit, however, has held that the issue of who is a shareholder for purposes of a diversity suit is a procedural question under Rule 23.1 and thus controlled by federal law. *H. F. G. Co. v. Pioneer Publishing Co.*, 162 F.2d 536 (7th Cir. 1947) ("HFG"). The court, in addressing the issue of whether the beneficial and equitable owners of stock were shareholders at the time of the suit, reasoned that:

> To hold that the application of the rule [23.1] is dependent upon local law means that the rule is or may be controlled at the will of the State. Certainly such an incongruous result was not intended, and we think it was not accomplished.

*Id.* at 540. This 1947 Seventh Circuit decision runs counter to the trend in other circuits[4] and has been widely criticized by commentators.[5] The opinion of Judge Lindley, who concurred in the reversal in *HFG*, is based on the premise that the issue is one of substantive law and states the more persuasive view:

---

3. Many state laws have been modeled after the federal requirements. Thus, even in a state suit the plaintiff must be both a stockholder at the time of the suit as well as at the time of the allegedly improper transaction. *See* Ill.Rev. Stat., Ch. 32, Section 157.45 and 8 Del.C.Ann. Section 327.

4. *See Drachman v. Harvey*, 453 F.2d 722 (2d Cir. 1971); *Hausmann v. Buckley*, 299 F.2d 696 (2d Cir.), *cert. denied*, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962); *Gallup v. Caldwell*, 120 F.2d 90 (3d Cir. 1941); and *Bankers National Corp. v. Barr*, 7 F.R.D. 305 (S.D.N.Y. 1945).

5. Wright and Miller note that *Erie* requires the application of state law to the issue of who is a stockholder for purposes of a derivative suit brought under diversity jurisdiction. This approach is the better view because there is no strong federal interest in establishing a uniform federal definition of "shareholder" for purposes of diversity suits. "In contrast to the judicial trend elsewhere, the Seventh Circuit apparently persists in the view that the determination whether a plaintiff is a shareholder for purposes of the federal rule is a procedural matter that need not be determined under local law." 7A Wright and Miller, Section 1826 at 327–328.

I agree that the judgment should be reversed, but I would employ somewhat different reasoning. Rule 23(b) [23.1] of the Federal Rules of Procedure is clearly of procedural character. Its function is to endow a shareholder with the right to maintain a suit such as this. But who constitutes a shareholder, it seems to me, is a question of substantive law, which under *Erie R. Co. v. Tompkins* . . . must be determined by the law of the state. In other words, the status of plaintiff who claims to be a stockholder is a question of Illinois law.

*Id.* at 541.

 Thus, the Court concludes that the question as to who is a stockholder for the

purposes of bringing a derivative action in federal court based on diversity is one of substantive law. There does not seem to be any overriding federal interest in determining who is a proper shareholder in a diversity case when that shareholder's rights are derived from state substantive law.[6] *See* note 4, *supra.* Moreover, the *HFG* decision can be limited to the distinction between equitable shareholders and shareholders of record.[7] This difference is not at issue here. In the instant case, the claim alleges breach of a state-created fiduciary duty and is in federal court only on the basis of diversity of citizenship.[8] Accordingly, *Erie* requires that the issue of who is a proper party (which includes the related factor of ownership at the time of the suit) for the

An even more critical view of the *HFG* case is held by Moore, who states that the "majority of the court in the *HFG* case confused the question as to the procedural character of original Rule 23(b) with the question whether the right of an equitable owner to sue is a matter of substantive law. Judge Lindley's concurring opinion . . . properly distinguishes the issues." 3B Moore's Federal Practice, Paragraph 23.1.17 at n.14.

**6.** The plaintiff filed a letter on October 30, 1979, directing the Court's attention to a Seventh Circuit case, *Portnoy v. Kawecki*, 607 F.2d 765 (7th Cir. 1979). A response was filed on November 8 and a reply on November 19. Briefly, the plaintiff argues that *Portnoy* is dispositive of this motion because the court, in affirming summary judgment in favor of the defendants, held that *Portnoy* lacked standing as a result of the merger and analogized his position to that of a stockholder in a corporation merged during the pendency of a derivative action. However, the *Portnoy* action was brought under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78p(b), invoking federal-question jurisdiction. State substantive law was not applied. *Portnoy* merely indicates that for the purposes of non-diversity suits under Rule 23.1, the Seventh Circuit rule for shareholder standing in a derivative suit is now the same as Delaware law; i. e., that a plaintiff must be a shareholder at the time of the transaction involved, at the time of the suit, and during the pendency of the litigation. *See Heit v. Tenneco*, 319 F.Supp. 884 (D.Del.1970), *Harff v. Kerkorian*, 324 A.2d 215 (Del.Ch.1974), *aff'd in part, rev'd in part on other grounds*, 347 A.2d 133 (Del.S.Ct.1975), and *Levien v. Sinclair Oil Company*, 261 A.2d 911 (Del.Ch.1969), *aff'd in part, rev'd in part on other grounds, Sinclair Oil Company v. Levien*,

280 A.2d 717 (Del.Sup.Ct.1971). It is not applicable to the fact situation herein.

**7.** The plaintiff in *HFG* was the sole equitable and beneficial shareholder of the stock described in the complaint, but was not the shareholder of record. The sole issue was "whether the equitable and beneficial owner of non-recorded shares of stock in a corporation is a 'shareholder' so as to be entitled to maintain a shareholder's suit on behalf of such corporation under 23(b)." *HFG, supra*, at 537. The defendant had claimed that Illinois law controlled and thus a non-record shareholder could not bring suit. The Court avoided this result by characterizing the question of "who is a shareholder" as procedural but later concluded that Illinois law would also allow derivative suit brought by a beneficial and equitable owner.

**8.** Applying the Seventh Circuit procedural principle to all diversity suits leads to incongruous results. For example, if a state's law does not recognize the right of a beneficial shareholder to bring a derivative suit, then all that the prospective plaintiff must do is file a diversity suit in federal court. Under *HFG*, the plaintiff would have standing to bring the suit. Furthermore, *Erie* would then mandate the application of state substantive law with respect to the cause of action itself. At this point, a plaintiff would be allowed to bring suit in federal court and be judged under the same state law which would have denied the existence of his cause of action if the case had been filed in state court. This type of situation is highly conducive to forum shopping, an evil which *Erie* and its progeny were designed to prevent. Furthermore, there is no apparent federal interest in procuring for an otherwise state-court plaintiff a cause of action in federal court

purposes of a shareholder derivative suit be determined under the appropriate state law.

### B. Conflicts of Law

Jurisdiction in this action is founded on diversity of citizenship; no federal securities violation is alleged. Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state substantive law will govern the action although the purely procedural aspects of the suit will be determined under federal law. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). As already indicated, the Court believes that this plaintiff's status and standing to bring the instant derivative suit are matters of state substantive law.

■ Therefore, it is necessary to look to the conflict of laws of Illinois to determine which state's law is applicable. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1947) held that in diversity cases, the *Erie* principle requires that a federal court follow the conflict of laws rule prevailing in the state in which the court is located.

> Under prevailing conflicts principles, state law typically will direct that a plaintiff's status be tested by the law of the corporation's state of incorporation.

7A Wright and Miller, Section 1826 at 328. Federal courts have consistently determined a plaintiff-shareholder's standing to bring a suit by looking to the law of the state of incorporation. *See Hausman v. Buckley*, 299 F.2d 696 (2d Cir.), *cert. denied*, 368 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962); *Lowell Wiper Supply Co. v. Helen Shop Inc.*, 235 F.Supp. 640 (S.D.N.Y.1964); and *Gallup v. Caldwell*, 120 F.2d 90 (3d Cir. 1941).

There is no reason to believe that Illinois courts would not apply this particular conflict rule. Since Hyatt was incorporated under the laws of Delaware, it is the law of that state which will determine the plaintiff's propriety to bring suit.

which would not exist under state law. The federal rules were not designed to save a cause of action for a plaintiff who failed to meet the standing requirements under state law merely

### II. DELAWARE LAW

The Delaware statute dealing with derivative suits, 8 Del.C.Ann. Section 327, is nearly identical in substance to Rule 23.1. In relevant part, Section 327 provides:

> In any derivative suit instituted by a stockholder of a corporation . . . it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law.

As is the case with Rule 23.1, Section 327 also has been interpreted to require that a plaintiff have proper shareholder status at the time the suit is commenced and at the time the alleged wrong occurred. *Heit v. Tenneco*, 319 F.Supp. 884 (D.Del.1970), *Harff v. Kerkorian*, 324 A.2d 215 (Del.Ch. 1974), *aff'd in part, rev'd in part on other grounds*, 347 A.2d 133 (Del.S.Ct.1975).

The moving defendants contend that the amended complaint should be dismissed because the plaintiff failed to allege that he is a shareholder at the present time or *was* a shareholder at the time of the questioned transaction. The Court disagrees with the latter argument because the plaintiff clearly alleges in the preface to the amended complaint that he was a "shareholder of Hyatt Corporation at the the time of the transactions complained of . . ." and in the complaint that he was "at all relevant times a shareholder of Hyatt."

■ The argument that the plaintiff is not now and was not a shareholder of Hyatt at the time of the suit presents a more complex problem. The sequence of events in this case makes it evident that plaintiff ceased being a shareholder of Hyatt on February 5, 1979, and that this derivative suit was filed later in the same month.[9]

because diversity allowed the suit to be brought in federal court.

**9.** A shareholder derivative bought subsequent to merger will be dismissed under Delaware

Moreover, since Section 327 has been interpreted to require shareholder status throughout the litigation as well as at its commencement, it is clear that plaintiff fails to meet this requirement as well. *Heit v. Tenneco*, 319 F.Supp. 884 (D.Del.1970); *Harff v. Kerkorian*, 324 A.2d 215 (Del.Ch. 1974), *aff'd in part, rev'd in part on other grounds*, 347 A.2d 133 (Del.S.Ct.1975); *Levien v. Sinclair Oil Corporation*, 261 A.2d 911 (Del.Ch.1969), *aff'd in part, rev'd in part on other grounds, Sinclair Oil Corporation v. Levien*, 280 A.2d 717 (Del.S.Ct.1971). However, the plaintiff contends (1) that at the time of the merger, he was a shareholder and had a derivative suit pending in New York, and (2) even though he is no longer a shareholder, Delaware law permits his presently pending federal suit in Illinois to go forward despite the fact that the merger deprived him of the necessary shareholder status at the time the suit was filed. In arguing that this suit may be maintained, plaintiff relies on 8 Del.C.Ann. Section 261, a saving clause for derivative suits:

> Any action or proceeding, whether civil, criminal or administrative, pending by or against any corporation which is a party to a merger or consolidation shall be prosecuted as if such merger or consolidation had not taken place, or the corporation surviving or resulting from such merger of consolidation may be substituted in such action or proceeding.

Both contentions are without merit.

■ Delaware law clearly holds that upon merger, the derivative rights on behalf of the merged corporation pass to the surviving corporation. 8 Del.C.Ann. Section 253. *Heit v. Tenneco*, 319 F.Supp. 884 (D.Del.1970). In this respect, shareholders of the merged corporation then lose their standing to maintain a derivative suit on behalf of the merged corporation against the surviving corporation. *Braasch v. Goldschmidt*, 41 Del.Ch. 519, 199 A.2d 760 (1964). This principle also has been applied to the situation where the merger occurs

not only in the *Braasch* post-merger sense but also during the course of the litigation. *Heit, supra.*

It is reasonable that a plaintiff's standing to maintain a derivative action on behalf of the merged corporation against the surviving corporation will be lost as a result of a merger; otherwise there would exist the anomalous situation of a corporation suing itself. *Bokat v. Getty Oil Company*, 262 A.2d 246 (Del.Sup.1970). Courts, however, have realized the possible inequities of this principle:

> Consequently most legislatures in enacting corporation laws began to include express provisions for a partial continuation of the existence of a corporation after the termination of its corporate life, for the purpose of enforcing liabilities that had previously accrued against it. Statutes of this type are remedial and should be broadly and liberally construed. Obviously it would be intolerable and contrary to public policy to permit a corporation to evade civil liability or escape criminal penalties by voluntarily terminating its existence.

*Abrams v. Occidental Petroleum Corp.*, 20 Fed.R.Serv.2d 170, 175 at n.5 (S.D.N.Y. 1975). If a shareholder voluntarily sells his stock during the pendency of this derivative suit, there is no reason to allow the suit to go on since the required status has been voluntarily lost. However, a merger and any subsequent exchange of stock does not constitute a voluntary sale of stock, but rather, an "economically forced exchange." *Id.* at 172.

■ To deal with this situation, Delaware passed Section 261 which essentially permits a derivative suit instituted before and pending at the time of the merger against a party other than the surviving corporation to proceed as though no merger had occurred. *Abrams* at 173. This avoids any possible corporate action to evade liability by merging with a second corporation and thus destroying all derivative actions

---

law since the plaintiff had ceased being a shareholder of the merged corporation. The plaintiff in that case became a creditor, entitled

to cash and different stock. *Weinberger v. UOP, Inc.* (Del.Ch.Ct. April 3, 1979) (Memorandum Opinion).

**618**

then pending. Furthermore, Delaware also expressly recognizes derivative claims against third parties, since the only claim that becomes moot is the one raised against the surviving corporation on behalf of the merged corporation. *Bokat v. Getty Oil Company,* 262 A.2d 246 (Del.Supr.1970).

Plaintiff's argument that Section 261 therefore saves this cause of action, however, is not convincing. The plain purpose of Section 261 is to save *pending* lawsuits. Moreover, the complaint must have been filed by a person who is a shareholder of the corporation on whose behalf the suit is brought, regardless of whether the suit is brought against a corporation or third parties. *Abrams, supra.* The plaintiff herein clearly had lost his shareholder status as of the February 5, 1979, merger. This complaint was not filed until three weeks later. Thus, plaintiff was not, for the purposes of Section 327, a stockholder at the time of the suit.[10]

Nor is plaintiff's claim saved by the fact that his New York suit was pending at the time of the merger. The instant cause of action, although stating similar facts and allegations, is not the same complaint as filed in New York or even an amendment thereto. That cause of action was voluntarily dismissed and a new, separate and independent complaint was filed in Illinois after plaintiff had lost his shareholder status. The Court does not believe that Section 261 was intended to apply in situations where the plaintiff, through his own omission, failed to file his cause of action in the proper court in a timely fashion. For the purposes of Section 327 as well as under Rule 23.1, the Court finds that the plaintiff lacks standing to bring this derivative action because he was not a shareholder at the time this suit was filed. Furthermore, Section 261 does not save the plaintiff's suit since the requirement that the suit be pending at the time of the merger has not been met.

**10.** These conclusions would be the same under Rule 23.1, Fed.R.Civ.P., since both statutes

## CONCLUSION

Since this derivative suit was filed after the merger was accomplished, the plaintiff lacks the necessary shareholder standing to bring this action under either Delaware or federal law. For this reason, the defendants' motions to dismiss are granted. Furthermore, given the lack of subject matter jurisdiction, the Court, on its own motion pursuant to Rule 12(h)(3), Fed.R.Civ.P., dismisses the action against the remaining defendants. It is so ordered.

(23.1 and Section 327) require shareholder status at the time of the suit.